EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION,
Plaintiff,

v.

PEABODY COAL COMPANY,
Defendant.

No. 01–CV–1050.

United States District Court,
D. Arizona.

Sept. 26, 2002.

Mary Joleen O'Neill, Esq, Katherine J. Kruse, Equal Employment Opportunity Commission, Phoenix, AZ, for plaintiff.

Lawrence Jay Rosenfeld, Esq, Mary E. Bruno, John F. Lomax, Jr., Greenberg Traurig LLP, Phoenix, AZ, for defendant.

## ORDER

MURGUIA, District Judge.

Pending before this Court are the following motions: Defendant's Motion for Summary Judgment (Doc. # 38); Defendant's Motion to Dismiss and/or Stay and/or Motion to Strike (Doc. # 24); Plaintiff's Motion to Strike Portions of the Statement of Facts and Affidavits Submitted by Defendant in Support of its Motion for Summary Judgment (Doc. # 43); Defendant's Motion to Strike Plaintiff's Reply in Support of Plaintiff's Motion to Strike as Untimely (Doc. # 49); and Delbert Mariano and Thomas Sahu's Motion to Intervene as Plaintiffs (Doc. # 23).

## I. FACTUAL BACKGROUND

The Equal Employment Opportunity Commission ("EEOC") has filed this Complaint against Peabody Western Coal Company ("Peabody Coal") claiming a violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e *et seq.*

Specifically, the EEOC alleges that Peabody Coal violates Title VII's prohibitions against national original discrimination by giving preference in hiring to Navajos over non-Navajo Native Americans at its coal mining operations located on the Navajo and Hopi Indian Reservations (the "Black Mesa Complex").

The EEOC claims that Delbert Mariano and Thomas Sahu, members of the Hopi Tribe, and Robert Koshiway, a member of the Otoe Tribe (now deceased), applied for positions with Peabody Coal and were denied employment in favor of members of the Navajo Nation. Before filing this lawsuit against Peabody Coal, the EEOC engaged in some informal conciliation. The conciliation process failed to resolve the matter, and this lawsuit was filed.

### A. THE COAL LEASES

Peabody Coal conducts coal mining operations on the Navajo and Hopi Reservations in northeastern Arizona pursuant to drilling and exploration permits and coal mining leases executed with the respective tribes.[1] These permits and coal leases require Peabody Coal to provide preference in employment to members of the respective tribes. These permits and coal leases also require approval of the United States Secretary of the Interior under certain circumstances. Specifically, these provisions are as follows.

---

1. These operations provide coal to the Salt River Project Agricultural Improvement and Power District generating station in Page, Arizona, and to Southern California Edison's Mojave generating station.

### 1. The 1961 Navajo Permit

The Drilling and Exploration Permit executed on May 13, 1961 between The Navajo Tribe of Indians and Sentry Royalty Company, Peabody Coal's predecessor in interest, provides in pertinent part:

9. Permittee shall commence prospecting operations for coal within ninety (90) days of the approval of this permit by the Secretary of the Interior . . .

10. Permittee will employ members of the Navajo Tribe when available in all positions for which they are qualified and pay prevailing wages to such Navajo employees. Permittee will make a special effort to work members of the Navajo Tribe into skilled, technical and other jobs in connection with its operations under this permit.

       *     *     *     *     *     *

12. This permit shall not be assignable without approval of the Advisory Committee of the Navajo Tribal Counsel and the Secretary of the Interior.

This Drilling and Exploration Permit (the "1961 Navajo Permit") was signed and is dated February 6, 1962, by James F. Canan, assistant area director, Bureau of Indian Affairs, Department of the Interior. Article XIX of the form Lease attached as Exhibit B to the "1961 Navajo Permit" also contains a Navajo employment preference provision as follows:

ARTICLE XIX. *NAVAJO EMPLOYMENT PREFERENCE*

Lessee agrees to employ Navajo Indians when available in all position for which, in the judgment of Lessee, they are qualified, and to pay prevailing wages to such Navajo employees and to utilize services of Navajo contractors whenever feasible.

Lessee shall make a special effort to work Navajo Indians into skilled, technical and other higher jobs in connection with Lessee's operations under this lease.

### 2. The 1964 Navajo Coal Lease No. 8580

A Mining Lease executed on February 1, 1964 between the Navajo Tribe and Sentry Royalty Company, Peabody Coal's predecessor in interest, for the lands that were subject of the 1961 Navajo Permit ("Navajo Coal Lease No. 8580"), provides in pertinent part:

ARTICLE VI. *TERMINATION OF FEDERAL JURISDICTION*

During the period that the land so leased is under Federal jurisdiction, the royalty provisions of this lease are subject to reasonable adjustment by the Secretary of the Interior or his authorized representative at the end of twenty years from the effective date of this lease, and at the end of each successive ten-year period thereafter. . . .

       *     *     *     *     *     *

ARTICLE VIII. *SUSPENSION OF MINING OPERATIONS*

Whenever permitted by law, if the Secretary of the Interior or his authorized representative considers the marketing facilities inadequate or the economic conditions unsatisfactory, he may, with the concurrence of the Advisory Committee of the Navajo Tribal Council, authorize the suspension of mining operations for such time as he considers advisable . . .

       *     *     *     *     *     *

ARTICLE X. *REGULATIONS*

Lessee shall abide by and conform to any and all regulations of the Secretary of the Interior now or hereafter in force relative to such leases . . .

       *     *     *     *     *     *

ARTICLE XI. *ASSIGNMENT OF LEASE*

Lessee shall not assign this lease or any interest therein by an operating agreement or otherwise, or sublet any portion of the leased premises, except with the prior approval of the Secretary of the Interior and the Advisory Committee of the Navajo Tribal Council . . .

       *     *     *     *     *     *

ARTICLE XVI. *CANCELLATION AND FORFEITURE*

When, in the opinion of the Mining Engineer of the Navajo Tribe and the Secretary of the Interior, before restrictions are removed, there has been a violation of any of the terms and conditions of this lease, the Secretary of the Interior and the Na-

vajo Tribe shall have the right ... to declare this lease null and void ...

\* \* \* \* \* \*

ARTICLE XIX. *NAVAJO EMPLOY-MENT PREFERENCE*

Lessee agrees to employ Navajo Indians when available in all positions for which, in the judgment of Lessee, they are qualified, and to pay prevailing wages to such Navajo employees and to utilize services of Navajo contractors where feasible.

Lessee shall make a special effort to work Navajo Indians into skilled, technical and other higher jobs in connection with Lessee's operations under this Lease.

\* \* \* \* \* \*

ARTICLE XXII. *OBSERVANCE OF TRIBAL RESOLUTIONS*

"Lessee agrees to comply with all lawful resolutions adopted by the Navajo Tribal Council."

\* \* \* \* \* \*

ARTICLE XXVIII. *NOTICES*

Any notice, demand or request provided for in this lease, or given or made in connection with it shall be deemed to be properly given if delivered in person, or sent by registered or certified mail ... to the persons specified below:

To or upon the Tribe:
Chairman
Navajo Tribal Council
Window Rock, Arizona
  and
General Superintendent
Navajo Agency, Bureau of Indian Affairs
Window Rock, Arizona ....

Navajo Coal Lease No. 8580 was approved on August 28, 1964 by John C. Dibbern, assistant area director of the Bureau of Indian Affairs, Department of the Interior.

**3. The 1964 Joint Use Permit**

A Drilling and Exploration Permit executed on June 1, 1964 between The Hopi Tribe of Arizona and The Navajo Tribe of Indians and Sentry Royalty Company, Peabody Coal's predecessor in interest (the "Joint Use Permit"), contains provisions nearly identical to those in the 1961 Navajo Permit. The Joint Use Permit provides in pertinent part:

1. Pursuant to authority contained in a resolution of the Hopi Tribal Council, H–7–64 dated June 1, 1964, and a resolution of the Advisory Committee of the Navajo Tribal Council, ACMY–77–64 dated May 7, 1964, Permittee is hereby granted the exclusive right to drill and explore for coal for a period of two years from and after the date of approval hereof by the Secretary of the Interior ....

\* \* \* \* \* \*

10. Permittee will employ members of the Hopi and Navajo Tribes when available in all positions for which they are qualified and pay prevailing wages to such Hopi and Navajo employees. Permittee will make a special effort to work members of the Hopi and Navajo Tribes into skilled, technical, and other higher jobs in connection with its operations under this permit.

\* \* \* \* \* \*

12. This permit shall not be assignable without the prior approval of the Hopi Tribal Council, the Advisory Committee of the Navajo Tribal Council, and the Secretary of the Interior.

The Joint Use Permit was approved and signed on October 20, 1964 by John C. Dibbern, area director, Gallup Area Office, Bureau of Indian affairs, Department of the Interior, and on October 23, 1964, by George W. Hadden, area director, Phoenix Area Office, Bureau of Indian Affairs, Department of the Interior.

Exhibit B to the Joint Use Permit, made a part thereof pursuant to paragraph 1 of the Joint Use Permit, and entitled "United States Department of the Interior Bureau of Indian Affairs Mining Lease between Sentry Royalty Company [Peabody Coal's predecessor in interest] and the Hopi and Navajo Tribes" (the "Joint Use Lease") contains provisions nearly identical to those in Coal Lease No. 8580, except that employment preference is given to both Hopis and Navajos. Before execution of the Joint Use Lease, however, a dispute arose regarding the terms of this Joint Use Lease. As a result, the Hopi Tribe and the Navajo Tribe executed separate mining leases on June 6, 1966.

The resulting Hopi Coal Lease, entitled "United States Department of the Interior Bureau of Indian Affairs Mining Lease between the Hope [sic] Tribe, State of Arizona and Sentry Royalty Company" required Sentry (predecessor in interest to Peabody Coal) to give Hopi Indians preference in hiring, allowed the Hopi Tribe to extend the preference to Navajo Indians, and required Sentry (predecessor in interest to Peabody Coal) to "make a special effort to work Hopi and Navajo Indians into skilled, technical and other higher jobs in connection with Lessee's operations under this lease."

### 4. The 1966 Navajo Coal Lease No. 9910

The resulting Navajo Lease ("Navajo Coal Lease No. 9910"), "United States Department of the Interior Bureau of Indian Affairs Mining Lease between Sentry Royalty Company and the Navajo Tribe State of Arizona," contained terms virtually identical to those in Navajo Coal Lease No. 8580, except that it allowed Sentry, predecessor in interest to Peabody Coal, to extend the employment preference provision to members of the Hopi Tribe. It provided in pertinent part as follows:

ARTICLE IV. *ANNUAL RENTAL*

Lessee agrees ... to pay or cause to be paid to the Secretary of the Interior or his authorized representative, for the use and benefit of the Navajo Tribe ...

\*    \*    \*    \*    \*    \*

ARTICLE VI. *SUSPENSION OF MINING OPERATIONS*

Whenever permitted by law, if the Secretary of the Interior or his authorized representative considers the marketing facilities inadequate or the economic conditions unsatisfactory, he may, with the concurrence of the Lessor, authorize the suspension of mining operations for such time as he considers advisable ...

\*    \*    \*    \*    \*    \*

ARTICLE VIII. *REGULATIONS*

Lessee shall abide by and conform to any and all regulations of the Secretary of the Interior now or hereafter in force relative to such leases ...

\*    \*    \*    \*    \*    \*

ARTICLE IX. *ASSIGNMENT OF LEASE*

Lessee shall not assign this lease or any interest therein by an operating agreement or otherwise, or sublet any portion of the leased premises, except with the prior approval of the Secretary of the Interior and the Lessor ..

\*    \*    \*    \*    \*    \*

ARTICLE XI. *INSPECTION*

The leased premises and producing operation, improvements, machinery and fixtures thereon and connected therewith and all pertinent books and accounts of Lessee shall be open at all times for inspection by agents of the Lessor or any duly authorized representative of the Secretary of the Interior.

\*    \*    \*    \*    \*    \*

ARTICLE XIV. *CANCELLATION AND FORFEITURE*

When, in the opinion of the Lessor and the Secretary of the Interior, before restrictions are removed, there has been a violation of any of the terms and conditions of this lease, the Secretary of the Interior and the Lessors shall have the right ... to declare this lease null and void ...

\*    \*    \*    \*    \*    \*

ARTICLE XVII. *EMPLOYMENT PREFERENCE*

Lessee agrees to employ Navajo Indians when available in all positions for which, in the judgment of Lessee, they are qualified, and to pay prevailing wages to such Navajo employees and to utilize services of Navajo contractors where feasible.

Lessee shall make a special effort to work Navajo Indians into skilled, technical and other higher jobs in connection with Lessee's operations under this Lease. Lessee may at its option extend the benefits of this Article to Hopi Indians.

\*    \*    \*    \*    \*    \*

ARTICLE XXVII. *NOTICES*

Any notice, demand or request provided for in this lease, or given or made in connection with it, shall be deemed to be properly given if delivered in person, or sent by registered or certified mail ... to the persons specified below:

Chairman
Navajo Tribal Council
Window Rock, Arizona
Secretary of the Interior (2 copies) ....

Navajo Coal Lease 9910 was approved and signed on July 7, 1966, by Graham Holmes, area director, Bureau of Indian Affairs, Department of the Interior.

### 5. Drafting, Negotiations, and Amendments

Peabody Coal in-house counsel Edward L. Sullivan Jr. has testified by affidavit that it is his understanding, based on his review of the 1961 Navajo Permit and the 1964 Joint Use Permit and the history of Peabody Coal's leasing rights in Arizona, that the 1961 Navajo Permit and the form of lease attached as Exhibit B thereto and the 1964 Joint Use Permit and the form of lease attached as Exhibit B thereto were drafted by the United States Secretary of Interior or his authorized representative and presented to Sentry with no meaningful opportunity to bargain over the employment preference term.

The 1964 Navajo Coal Lease No. 8580 and the 1966 Navajo Coal Lease No. 9910 contain virtually identical terms as excerpted above, to the terms in the form leases, with the exception that the 1966 Navajo Coal Lease No. 9910 allows Sentry to extend the Navajo hiring preference to the Hopi Tribe as well.

Attorney Sullivan has further testified pursuant to affidavit that the 1964 Navajo Coal Lease No. 8580 and the 1966 Navajo Coal Lease No. 9910 have been amended twice since they were executed, each time with the approval of the Secretary of the Interior, and each time without any changes to the employment preference provision. In 1987, he testified, a new article was added to each lease, stating that all provisions of the original leases would continue in full force and effect, except as expressly modified by the amendments. The most recent amendment was approved on March 29, 1999, by Bruce Babbitt, then Secretary of the Interior, he testified.

Attorney Marvin O. Young, former Peabody Coal general counsel from 1968 to 1985,

further testified by affidavit that he is familiar with two other Mining Leases executed with the Navajo Nation, one by Utah International, and one by P & M, and that each contains a Navajo employment preference clause. He testified by affidavit that "It is my understanding that the United States Secretary of the Interior required these employment preference provisions as a condition of the leases, as part of a standardized practice by the Secretary of the Interior at the time."

### 6. Navajo Preference in Employment Act

While this lawsuit has been pending, Peabody Coal has been subject to legal action by the Navajo Nation seeking to enforce the Navajo Preference in Employment Act, 15 NNC § 601, *et seq.*

Section 604 of the Navajo Preference in Employment Act states as follows:

§ 604. **Navajo employment preference**

A. All employers doing business within the territorial jurisdiction [or near the boundaries] of the Navajo Nation, or engaged in any contract with the Navajo Nation, shall:

1. Give preference in employment to Navajos ...

15 NNC § 604.

### B. EEOC'S OBJECTIONS TO THE EVIDENCE

The EEOC has not offered any evidence to controvert the evidence offered by Peabody Coal and outlined above, nor has it suggested that it has any such evidence. The EEOC has not disputed that the documents offered by Peabody Coal, specifically the 1961 Navajo Permit, the 1964 Joint Use Permit, the Hopi Lease, and 1964 Navajo Coal Lease No. 8580 and the 1966 Navajo Coal Lease No. 9910 contain the terms outlined.[2]

The EEOC, however, has moved to strike certain statements outlined in section A.4., *supra*, by Peabody Coal former and present in-house counsel relating to the Secretary of

---

2. The EEOC states at page 2 of its brief that "[t]o the extent that the two affiants' avowals rely on actual language from the lease agreements or other documents attached to their affidavits, the Commission has not challenged the avowals."

Interior's direct involvement in drafting and approving the Coal Leases, and whether the Navajo employment preference is typically included in such Coal Leases. These statements, the EEOC argues, should not be admitted with regards to Peabody Coal's argument that the issue in this litigation presents a nonjusticiable political question.

The EEOC originally also moved to strike Mr. Sullivan's sworn statements referring to the contents of the amendments to the Coal Leases, *i.e.*, his testimony that the Coal Lease amendments did not change the Navajo hiring preference. The EEOC, however, has since stipulated that the amendments and related supplements to Navajo Coal Lease 8580 and Navajo Coal Lease 9910 "did not change, or address, the hiring preferences outlined in those leases." *See* Corrected Stipulation Regarding Lease Amendments, dated 7/23/02 (Doc. # 57).

The EEOC apparently retains its original objections to Mr. Sullivan's sworn statements as to his understanding that the Secretary of the Interior drafted the original Permits and form of Leases, and that Sentry was not provided the opportunity to bargain over the employment preference term, arguing he has not shown personal knowledge of the negotiations. The EEOC also moved to strike Attorney Young's statement that it was his understanding that the Navajo employment preference was required by the Secretary of Interior in mining leases, and was typical of such leases, on the ground attorney Young has not established personal knowledge.

Peabody Coal, however, cites to a brief that the EEOC filed with the United States Court of Appeals for the Ninth Circuit, wherein Peabody Coal conceded that the Navajo employment preference provisions are aggressively pushed by the Navajo Nation and are in a number of the Navajo Nation's lease agreements. *See* EEOC's Motion to Intervene in *Dawavendewa v. Salt River Project Agricultural Improvement and Power District*, at p. 14, attached as Ex. B to Defendant's Response to Plaintiff's Motion to Strike.

## II. PROCEDURAL BACKGROUND

Defendant Peabody Coal has moved pursuant to Rule 56 of the Federal Rules of Civil Procedure for summary judgment to dismiss this Complaint on the ground that 1) the Navajo Nation is a necessary and indispensable party to this litigation and its joinder is not feasible under Rule 19(b) because the EEOC is not empowered to bring this action against the tribe; or alternatively 2) this case presents a nonjusticiable political question. In the event this Court does not grant Peabody Coal's motion for summary judgment, Defendant Peabody Coal has moved pursuant to Rules 12(b)(6) and Rule 12(f) to dismiss and/or stay and/or strike this Complaint on the grounds that 1) the EEOC failed to conciliate as required by Title VII; 2) the EEOC failed to set forth legal bases warranting the relief it requests; and 3) the EEOC has defined a class in a manner not permitted by Section 706 of the Civil Rights Act of 1964 on which the EEOC relies.

Finally, Delbert Mariano and Thomas Sahu, members of the Hopi Tribe, and the charging parties in the EEOC complaint, have moved pursuant to Rule 24 of the Federal Rules of Civil Procedure to intervene as plaintiffs in this lawsuit.

## III. STANDARD OF REVIEW

■ A motion to dismiss for failure to state a claim for relief under Rule 12(b)(6) must be treated as a motion for summary judgment under Federal Civil Procedure Rule 56 if either party to the motion to dismiss submits materials outside the pleadings in support of or in opposition to the motion that the Court relies on in its ruling. *Anderson v. Angelone*, 86 F.3d 932, 934 (9th Cir.1996).

A motion for summary judgment may be granted only if the evidence shows "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). To defeat the motion, the non-moving party must show that there are genuine factual issues "that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986).

The party opposing summary judgment "may not rest upon the mere allegations or

denials of [the party's] pleadings, but ... must set forth specific facts showing that there is a genuine issue for trial." Fed. R.Civ.P. 56(e); *see also Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). The Court views the evidence in the light most favorable to the nonmoving party, Plaintiff here, and draws any reasonable inferences in the nonmoving party's favor. *See Warren v. City of Carlsbad,* 58 F.3d 439, 441 (9th Cir.1995), *cert. denied,* 516 U.S. 1171, 116 S.Ct. 1261, 134 L.Ed.2d 209 (1996).

A case is deemed to have raised a political question not suitable for judicial review if one of the following formulations is inextricable from the case:

> Prominent on the surface of any case held to involve a political question is found a textually demonstrable constitutional commitment of the issue to a coordinate political department; *or* a lack of judicially discoverable and manageable standards for resolving it; *or* the impossibility of deciding without an initial policy determination of a kind clearly for nonjudicial discretion; *or* the impossibility of a court's undertaking independent resolution without expressing lack of the respect due coordinate branches of government or an unusual need for unquestioning adherence to a political decision already made; *or* the potentiality of embarrassment from multifarious pronouncements by various departments on one question.

*Baker v. Carr,* 369 U.S. 186, 217, 82 S.Ct. 691, 710, 7 L.Ed.2d 663 (1962) (emphasis added).

## IV. DISCUSSION

■ Rule 19 of the Federal Rules of Civil Procedure requires that this Court determine 1) whether an absent party is necessary to the action; and then 2) if the party is necessary but cannot be joined, whether the party is indispensable such that in "equity and good conscience" the suit should be dismissed. *Confederated Tribes v. Lujan,* 928 F.2d 1496, 1498 (9th Cir.1991).

The EEOC has expressly conceded that the Navajo Nation is a necessary party to this litigation under Rule 19(a) of the Federal Rules of Civil Procedure. *See* Plaintiff's Opposition at page 4, lines 2–3.

The EEOC argues, however, that dismissal is not appropriate because this Court can and should Order that the Navajo Nation be made a party to this litigation. The EEOC specifically asks that this Court "order the Navajo Nation to appear and defend any interests it believes may be affected by this litigation." *See* Plaintiff's Opposition at page 4, lines 24–25. The EEOC further indirectly characterizes this lawsuit as litigation over "the validity of its [the Navajo Nation's] discriminatory lease provision and employment preference provisions ... [and] the interplay between its tribal sovereignty and Title VII." *Id.* at p. 5, lines 18–21. Thus, the initial issue before this Court on Peabody Coal's Motion for Summary Judgment is whether the Navajo Nation can properly be joined as defendant in this lawsuit.

### A. The EEOC's Statutory Authority To Sue The Navajo Nation

Peabody Coal does not argue that The Navajo Nation cannot assert sovereign immunity against any lawsuit that might be brought by the EEOC, as representative of the United States.

Instead, Peabody Coal claims that the Court may not join the Navajo Nation because the Commission may not maintain an action "against a government, governmental agency, or political subdivision." *See* 42 U.S.C. § 2000e–5(f)(1); 42 U.S.C. § 2000e–4(g)(6). The first cited statute reads in pertinent part as follows:

> ... *In the case of a respondent which is a government, governmental agency, or political subdivision,* if the Commission has been unable to secure from the respondent a conciliation agreement acceptable to the Commission, the Commission shall take no further action and *shall refer the case to the Attorney General* who may bring a civil action against such respondent in the appropriate United States district court.

42 U.S.C. § 2000e–5(f)(1) (emphasis added). The second cited statute authorizes the EEOC to intervene in actions brought under 2000e–5 against "a respondent *other than* a government, governmental agency or politi-

cal subdivision." *See* 42 U.S.C.2000e–4(g)(6) (emphasis added).

The EEOC does not dispute that the Navajo Nation is a "government, governmental agency, or political subdivision" under these statutes. The EEOC, however, argues that the plain language of this portion of Title VII applies *only* to a "respondent" who is "a government, governmental agency, or political subdivision." It further argues that the Navajo Nation is not a "respondent" under the statutory definition. The referenced statute provides as follows:

> (n) The term "respondent" means an employer, employment agency, labor organization, joint labor-management committee controlling apprenticeship or other training or retraining program, including an on-the-job training program or Federal entity subject to section 2000e–16 of this title.

42 U.S.C.2000e(n). The EEOC argues that the Navajo Nation was not an employer in this case, and thus cannot be considered a "respondent" for purposes of 42 U.S.C. § 2000e–5(f)(1). Thus, the EEOC concludes, 42 U.S.C. § 2000e–5(f)(1) does not limit its power to sue the Navajo Nation.

Another district court, addressing the similar argument that the EEOC had authority to sue a government so long as it did not directly seek relief from the government, soundly rejected it, reasoning:

> In short, the EEOC argues that Congress intended to preclude the EEOC from suing governmental entities for some purposes but not for others. This position is entirely unsupported by the language of the statute, by case law, and by any reasonable policy justification.

*U.S. EEOC v. AFT Local # 571,* 761 F.Supp. 536, 539 (N.D.Ill.1991) (holding that EEOC's joinder of a school district, a participant in a collective bargaining agreement, as a necessary party under Rule 19 "was frivolous in view of unambiguous statutory and case law authority which prohibited the EEOC from naming [a governmental entity] as a defendant"). The Court quoted another court's reasoning with approval as well:

> It goes too far to argue that EEOC in suing a private party must be able to join indispensable governmental entities or enforcement of the statute will be frustrated.

The Attorney General is, after all, part of the federal government also and if he decides to sue a public body he will necessarily have to make the converse decision to join the indispensable private party. The motion to dismiss the Board is granted. *Id.* at 540. The same reasoning applies here to reject the EEOC's contention that the statute does not prohibit it from suing the Navajo Nation, a government, because it is not a "respondent" government. The EEOC argument is too strained to support what the statute clearly was not intended to authorize.

The EEOC concedes, moreover, that Indian tribes, including the Navajo Nation, are specifically exempt as employers from the requirements of Title VII, pursuant to 42 U.S.C. § 2000e(b), which provides in pertinent part as follows:

> (b) The term "employer" . . . does not include (1) . . . an Indian tribe . . .

42 U.S.C. § 2000e(b). The EEOC concludes from this section, however, that Congress intended to exempt the Navajo Nation from suit *only* when it was an employer, and *not* when it might instead be considered a "government entity."

■ The EEOC's interpretation of these two statutes together is mistaken, as contrary to their plain meaning. The Attorney General clearly has exclusive authority to file suit whenever a government such as an Indian tribe is involved. *See* 42 U.S.C. § 2000e–5(f)(1); *see also* 42 U.S.C. § 2000e–5(f)(2); 42 U.S.C. § 2000e–8(c) (the Attorney General is to take the appropriate action "in a case *involving* a government, governmental agency, or a political subdivision.") The EEOC cannot expand its authority to bring suit against an Indian tribe, which is clearly exempt from the provisions of Title VII, and is also a "government" specifically exempted from suit by the EEOC, on such a thin argument. No meaningful distinction exists between "respondent" and "defendant" under the circumstances presented here. The EEOC in effect is seeking to sue the Navajo Nation to force it to defend the Navajo Preference in Employment Act and its contracts with employers working on its lands, when it is prohibited from suing the Navajo Nation to enforce Title VII provisions against the

tribe directly. This is contrary to the clear provisions of Title VII prohibiting the EEOC from suing governments, and specifically exempting the Indian tribes from its provisions. *See EEOC v. AFT Local # 571,* 761 F.Supp. at 539.

The EEOC further argues that it has the authority to sue the Navajo Nation pursuant to 42 U.S.C. § 2000e–5(a), which provides in pertinent part as follows:

> The Commission is empowered, as hereinafter provided, to prevent any person from engaging in any unlawful employment practice as set forth in section 2000e–2 or 2000e–3 of this title.

42 U.S.C. § 2000e–5(a). The EEOC argues that the statutory definition of "person" specifically includes "governments, governmental agencies, political subdivisions." *See* 42 U.S.C. § 2000e(a). Therefore, the EEOC concludes, "there simply is no basis for Peabody's claim that the Commission cannot litigate this claim when the Navajo Nation is present." *See Plaintiff's Opposition* at page 7. This argument also fails. The EEOC's authority under this section is limited to enforcement of sections 2000e–2 and 2000e–3, which specifically prohibit an "employer," as defined in 2000e(n), from discrimination on the basis of national origin, or retaliation.

The EEOC's reliance on the suggestion in *Dawavendewa v. Salt River Project Agricultural Improvement & Power District,* 276 F.3d 1150, 1162 (9th Cir.2002) (*Dawavendewa II*) that plaintiff might have a viable alternative forum by virtue of a lawsuit instituted by the EEOC, since "tribal sovereign immunity does not apply in suits brought by the EEOC," is misplaced. *See Dawavendewa II,* 276 F.3d at 1162 (quoting *EEOC v. Karuk Tribe Hous. Auth.,* 260 F.3d 1071, 1075 (9th Cir.2001)).[3] This issue was not specifically before the Court or necessary to its holding, and is therefore dicta. *See id.* Moreover, that Court did not address the issue of whether the EEOC had *statutory*

authority to bring a lawsuit against an Indian tribe, the issue here. *See id.*

■ This Court is not persuaded that Title VII grants the EEOC authority to sue an Indian tribe when it is not the employer, but is instead a party to Coal Leases executed with the employer that direct it to give preference to Navajos. After all, Title VII expressly exempts Indian tribes from its provisions, and expressly prohibits the EEOC from naming as respondent parties "governments," a term the EEOC does not dispute includes Indian tribes. This Court is persuaded that Congress did not intend to authorize the EEOC to name the Indian tribes as defendants in a lawsuit alleging Title VII violations, no matter what their role. This Court is further persuaded that joinder of an Indian tribe under Rule 19 would divest the EEOC of its authority to litigate. *See EEOC v. AFT, Local # 571,* 761 F.Supp. at 539.

Accordingly, this Court concludes that the joinder of the Navajo Nation, a necessary party under Rule 19(a) of the Federal Rules of Civil Procedure, is not feasible.

## B. Whether the Navajo Nation is an Indispensable Party

Thus, this Court must decide whether the Navajo Nation is an indispensable party to this lawsuit such that in "equity and good conscience" the suit should be dismissed. *See Confederated Tribes v. Lujan,* 928 F.2d at 1498; Fed. Civ. Pro. Rule 19(b).

■ To make this determination, the Court must balance four factors: 1) the prejudice to any party or to the absent party; 2) whether relief can be shaped to lessen prejudice; 3) whether an adequate remedy, even if not complete, can be awarded without the absent party; and 4) whether there exists an alternative forum. *See Kescoli v. Babbitt,* 101 F.3d 1304, 1310 (9th Cir.1996).

---

**3.** The EEOC mistakenly cites *Karuk* and *Dawavendewa II* for the proposition that the Ninth Circuit "has twice expressly stated than an Indian tribe is a proper party to litigation brought by the Commission." *See* Opposition at p. 4, ll. 7–9. In neither of those cases did the Ninth Circuit address the issue of whether the EEOC has statutory authority to sue an Indian tribe under Title VII. In *Karuk,* the Ninth Circuit specifically held that the EEOC did not have regulatory jurisdiction over an Indian tribe under the Age Discrimination in Employment Act, even though the ADEA does not expressly exempt Indian tribes from its jurisdiction, as does Title VII. *See Karuk,* 260 F.3d at 1082.

The Ninth Circuit addressed these factors in *Dawavendewa II*, involving a lease between Salt River Project and the Navajo Nation that contains a Navajo Employment Preference provision similar to the one in the Coal Leases at issue here. *See Dawavendewa II*, 276 F.3d at 1161–63.

■ With regards to the first factor, prejudice to any party or to the absent party, the Ninth Circuit found in that case that any decision in the absence of the Navajo Nation would prejudice the Navajo Nation's economic interests in the lease, "namely its ability to provide employment and income for the reservation." *See id.* at 1162. The court also found that a decision would "prejudice the Nation's sovereign interests in negotiating contractual obligations and governing the reservation." *See id.* The court also found that the absence of the Nation would prejudice the defendant by preventing the resolution of its lease obligations. *See id.* The same prejudice would occur here with respect to the Navajo Nation and Peabody Coal.

With regards to the second factor, whether relief can be shaped in the Nation's absence to lessen prejudice, the court found that any decision mollifying the plaintiff would prejudice the Nation in its contract with the defendant and its governance of the tribe. *See id.* The same is true here: any relief for the EEOC would come at the expense of the economic and sovereign interests of the Nation.

With regards to whether an adequate remedy could be fashioned absent the Nation, the court found that no partial relief would be adequate, that injunctive relief would necessarily result in the above-described prejudice to the defendant and the Nation, and an award of damages would not resolve defendant's potential liability to other plaintiffs. *See id.* The same holds true here as well. This factor also warrants dismissal.

The only distinction between the Ninth Circuit's analysis in *Dawavendewa II* and this case with respect to the issue of whether the Navajo Nation is an indispensable party is with regards to the fourth factor, whether there exists an alternative forum. In *Dawavendewa II*, the Ninth Circuit suggested in dicta that the plaintiff "may have a viable alternative forum in which to seek redress" by joining in a lawsuit filed by the EEOC (on the premise the Nation could not assert sovereign immunity against the EEOC), or by suing in tribal court, obtaining an adverse decision, and then bringing suit against the officials in federal court. *See id.* at 1162–63 and n. 12. "Recognizing the resources and aggravation consumed in relitigating," however, the court determined that this factor "remains in equipose." *See id.* at 1163. The court noted, moreover, that the absence of any alternative forum to air the grievance was not an impediment to dismissal on grounds an absent party was indispensable. *See id.* at 1162. Here, there may be no alternative judicial forum. This Court, however, finds that this is not an impediment to dismissal.

On balancing these four factors, this Court finds, as did the Ninth Circuit in *Dawavendewa II*, that the Nation is an indispensable party, and that "in equity and good conscience" the lawsuit cannot proceed in its absence. *See id.* at 1163.

Dismissal of this action is therefore proper because the Navajo Nation, a necessary and indispensable party to this litigation, cannot be made a party to this litigation by the EEOC under the specific provisions of Title VII. *See* 42 U.S.C. § 2000e–5(f)(1)(prohibiting the EEOC from filing action against a "government"); 42 U.S.C. § 2000e(b) (exempting Indian tribes from provisions of Title VII); *Dawavendewa II*, 276 F.3d at 1162 (holding that the Navajo Nation was a necessary and indispensable party to employment discrimination lawsuit involving its leases, and that the lawsuit could not go forward in its absence).

### C. Whether this Case Presents a Nonjusticiable Political Question

■ Even if arguably the EEOC did have statutory authority to sue the Navajo Nation under the circumstances presented here, and its joinder did not divest the EEOC of its authority to litigate, this Court also finds that this case presents a nonjusticiable political question, and it must be dismissed on this alternative ground as well.

The political question doctrine is a "tool for the maintenance of governmental order," and "primarily a function of the separation of powers." *Baker v. Carr,* 369 U.S. 186, 214, 210, 82 S.Ct. 691, 709, 706, 7 L.Ed.2d 663 (1962). In deciding whether a case raises a political question that is not suitable for judicial review, the Court fashioned the following test:

> Prominent on the surface of any case held to involve a political question is found a textually demonstrable constitutional commitment of the issue to a coordinate political department; *or* a lack of judicially discoverable and manageable standards for resolving it; *or* the impossibility of deciding without an initial policy determination of a kind clearly for nonjudicial discretion; *or* the impossibility of a court's undertaking independent resolution without expressing lack of the respect due coordinate branches of government or an unusual need for unquestioning adherence to a political decision already made; *or* the potentiality of embarrassment from multifarious pronouncements by various departments on one question.

*Id.* at 217, 82 S.Ct. at 710 (emphasis added). If *any one* of these "formulations is inextricable from the case at bar," the case should be dismissed on the ground it presents a nonjusticiable political question. *See id.; see also Powell v. McCormack,* 395 U.S. 486, 518–19, 89 S.Ct. 1944, 1962, 23 L.Ed.2d 491 (1969) (noting that a nonjusticiable political question must involve at least one of these formulations).[4] It is necessary to conduct a "discriminating inquiry into the facts and posture of the particular case" to ascertain whether it presents a nonjusticiable political question. *Baker v. Carr,* 369 U.S. at 217, 82 S.Ct. at 710.

### 1. The Issues Presented

The EEOC seeks in this action in effect to enjoin enforcement of the Navajo Employment Preference provisions agreed to by the Navajo Nation and Peabody Coal and approved by the Department of the Interior through a representative of the Bureau of Indian Affairs in 1964 Navajo Coal Lease No. 8580 and the 1966 Navajo Coal Lease No. 9910. The EEOC has specifically requested in its Complaint that this Court in part:

> A. Grant a permanent injunction enjoining Peabody, its officers, successors, assigns and all persons in active concert or participation with it, from engaging in discrimination on the basis of national origin.

Complaint, Prayer for Relief at A. In fact, the EEOC has indicated that it intends not only to seek to void or rework the Navajo Nation's Coal Leases, but also to seek to enjoin the Navajo Nation from enforcing its Navajo Preference in Employment Act. *See* Plaintiff's Opposition, at p. 8, lines 4–6, p. 15, n. 7. The Navajo Nation Preference in Employment Act directs that "[a]ll employers doing business within the territorial jurisdiction ...." of the Navajo Nation, or engaged in any contract with the Navajo Nation, shall ... "[g]ive preference in employment to Navajos ..." 15 NNC § 604. The EEOC suggests, however, that the Navajo Nation is free *only* to require that private company such as Peabody Coal operating on their reservations "adopt hiring preferences for *all* Native Americans living on or near the reservations," but *not* to adopt hiring preferences applicable to Navajos only. *See id.* at p. 15 n. 7. In Plaintiff's Motion to Strike Portions of The Statement of Facts and Affidavits Submitted by Defendant, in fact, the EEOC describes "the central issue in this case" as "whether the Navajo Nation can discriminate against non-Navajo Native Americans." *See* Plaintiff's Motion to Strike, p. 2, ll. 19–20. The EEOC suggests, moreover:

> There is nothing in Title VII which says that the Navajo Nations, as a sovereign subordinate to the superior sovereignty of the United States, cannot be enjoined from engaging in actions clearly prohibited by Title VII.

*See* Plaintiff's Opposition, at page 8, lines 4–6.

This EEOC position on its face appears to be in direct contradiction to the position taken by the United States Department of the Interior through its approval and signature

---

**4.** As evidenced by these portions of the Courts' opinions, the EEOC is mistaken in its assertion that the doctrine is not implicated absent a "textually demonstrable constitutional commitment." *See id.*

of its authorized representatives on the Coal Leases containing the Navajo Employment Preference provision at issue.

The EEOC concedes in this action that the documents offered by Peabody Coal, specifically the 1961 Navajo Permit, the 1964 Joint Use Permit, the Hopi Lease, and 1964 Navajo Coal Lease No. 8580 and the 1966 Navajo Coal Lease No. 9910, contain the terms outlined. It is therefore undisputed that the permits and leases at issue was approved and signed by a representative of the United States Department of the Interior. It is undisputed that these documents are replete with provisions that require the oversight of the Secretary of the Interior. It is undisputed that the Secretary of the Interior has specific authority to declare either of these leases "null and void" when in the opinion of the Secretary of the Interior and the Mining Engineer of the Navajo Tribe, "there has been a violation of any of the terms and conditions of the lease." Moreover, it is undisputed that Navajo Coal Lease No. 9910 is specifically entitled: "United States Department of the Interior Bureau of Indian Affairs Mining Lease between Sentry Royalty Company [predecessor in interest to Peabody Coal] and the Navajo Tribe State of Arizona." Finally, the EEOC has stipulated that the amendments to these Coal Leases "did not change, or address, the hiring preferences outlined in those leases." Thus, it is undisputed that as recently as 1999, the Secretary of the Interior through its authorized representative, approved or signed off on the Navajo Employment Preference provision.

### 2. The EEOC's Objections

The EEOC in fact has offered *no* evidence at all to dispute the evidence offered by Peabody Coal. Nor has the EEOC suggested that the testimony offered by Peabody Coal attorneys is false or that these attorneys are somehow wrong in their sworn testimony that it is their understanding that the Secretary of the Interior drafted the initial documents, and routinely requires this type of provision in such leasing agreements.

■ Instead, the EEOC moves to strike these sworn statements, on the grounds that the attorneys making the statements do not have personal knowledge necessary to make these statements. This Court declines to do

so. Attorney Sullivan, senior counsel for Peabody Holding Company, Inc., who serves as primary in-house counsel for Peabody Coal, testified that in that capacity he had "become familiar with numerous documents reflecting the relationship between Sentry Royalty Company ('Sentry') PWCC's [Peabody Coal's] predecessor in interest, and both the Navajo Tribe and the Hopi Tribe." He testified that those documents included the Navajo Coal Lease No. 8580 and Navajo Coal Lease 9910, and the amendments thereto. By virtue of his experience and his review of these documents in his capacity as in-house counsel for Peabody Coal, Attorney Sullivan had the personal knowledge and competency required under the governing law to testify as to his understanding as to the documents' origin, development and meaning. *See, e.g., Barthelemy v. Air Lines Pilots Assoc.*, 897 F.2d 999, 1017 (9th Cir. 1990) (corporate officers' "personal knowledge and competence to testify are reasonably inferred from their positions"); *Federal Savings & Loan Ins. Corp. v. Griffin*, 935 F.2d 691, 702 (5th Cir.1991) (corporation's senior attorney could testify to matters in affidavit that the learned through the corporation's business records, even though he did not have "personal knowledge" as to all matters). Former Peabody Coal general counsel Attorney Young testified by affidavit that in his capacity as general counsel and as part of his job duties, he "became familiar with lease agreements that Peabody predecessor, Sentry Royalty Company, entered into with the Navajo Nation for coal mining operations ... [and] with the terms of coal mining leases that other entities had with the Navajo Nation." Based on his experience and job duties, attorney Young had the personal knowledge and competency required under the governing law to testify as to his understanding that the Secretary of the Interior required the Navajo Employment Preference as a condition of the leases. *See id.*

Even if the Peabody Coal's counsels' statements to which the EEOC objects were stricken, however, this Court finds that the actual Permits and Coal Leases in the undisputed record before this Court provide ample support for the proposition that the Secretary of the Interior, through the Bureau of

Indian Affairs, has to this date a policy of requiring or at least approving Navajo Employment Preference provisions in Coal Leases executed by private companies with the Navajo Nation.

The EEOC's position in this lawsuit therefore is in direct contradiction to the position of the Secretary of the Interior. Any decision by this Court would of necessity require it to make an initial policy choice between the EEOC's enforcement of Title VII and its underlying policies against discrimination and the Secretary of the Interior's policies and practices with regards to Indian tribes. This is the type of case presenting "the impossibility of deciding without an initial policy determination of a kind clearly for non judicial discretion" that is not appropriate for judicial resolution. *See Baker v. Carr,* 369 U.S. at 217, 82 S.Ct. at 710. Moreover, any decision by this Court would require it to show a lack of respect for one of the two governmental entities: either the EEOC or the Department of the Interior. For this reason also, this case presents a nonjusticiable political question. *See id.* (a political question is presented when it is clear "the impossibility of a court's undertaking independent resolution without expressing lack of the respect due co-ordinate branches of government"). Finally, any decision by this Court is likely to lead to the potential "of embarrassment from multifarious pronouncements by various departments on one question." *See id.* The EEOC and the Department of the Interior, through the Bureau of Indian Affairs, have different interests and opposing views on the issue of the Navajo Employment Preference provision. For all of these reasons, this Court finds that this case presents a nonjusticiable political issue, and it must be dismissed on this alternative ground also. *See id.*

Accordingly,

**IT IS HEREBY ORDERED** that Defendant's Motion for Summary Judgment (Doc. # 38) is **GRANTED**;

**IT IS FURTHER ORDERED** that Plaintiff's Motion to Strike Portions of the Statement of Facts and Affidavits Submitted by Defendant in Support of its Motion for Summary Judgment (Doc. # 43) is **DENIED**;

**IT IS FURTHER ORDERED** that Defendant's Motion to Strike Plaintiff's Reply in Support of Plaintiff's Motion to Strike as Untimely (Doc. # 49) is **DENIED**;

**IT IS FURTHER ORDERED** that Defendant's Motion to Dismiss and/or Stay and/or Motion to Strike (Doc. # 24) is **VACATED AS MOOT**;

**IT IS FURTHER ORDERED** that Delbert Mariano and Thomas Sahu's Motion to Intervene as Plaintiffs (Doc. # 23) is **VACATED AS MOOT.**

**IT IS FURTHER ORDERED** That Clerk of the Court shall **ENTER JUDGMENT ACCORDINGLY.**