**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

EQUAL EMPLOYMENT OPPORTUNITY
COMMISSION,
_Plaintiff-Appellant,_

v.

PEABODY WESTERN COAL COMPANY;
NAVAJO NATION, Rule 19
defendant,

_Defendants-Appellees._

No. 06-17261

D.C. No.
CV-01-01050-MHM

OPINION

Appeal from the United States District Court
for the District of Arizona
Mary H. Murguia, District Judge, Presiding

Argued and Submitted
September 22, 2008—San Francisco, California

Filed June 23, 2010

Before: Procter Hug, Jr., Andrew J. Kleinfeld, and
William A. Fletcher, Circuit Judges.

Opinion by Judge William A. Fletcher

## COUNSEL

Susan R. Oxford, EEOC APPELLATE SECTION, Washington, D.C., Katherine Kruse, EEOC, Phoenix, Arizona, for the appellant.

Mary E. Bruno, John F. Lomax, Jr., Lawrence J. Rosenfeld, GREENBERG TRAURIG LLP, Phoenix, Arizona, Louis Denetsosie, NAVAJO NATION DEPARTMENT OF JUSTICE, Window Rock, Arizona, Lisa M. Enfield, Paul E. Frye, FRYE LAW FIRM, Albuquerque, New Mexico, for the appellees.

## OPINION

W. FLETCHER, Circuit Judge:

The Equal Employment Opportunity Commission ("EEOC") appeals various rulings of the district court in its suit against Peabody Western Coal Company ("Peabody"). Peabody leases mines from the Navajo Nation ("the Nation"),

and maintains a preference for employing Navajo workers at these mines. EEOC alleges that in maintaining its employment preference Peabody discriminates against non-Navajo Indians, including two members of the Hopi Nation and one member of the Otoe tribe, in violation of Title VII, 42 U.S.C. § 2000e-2(a)(1). The district court first dismissed EEOC's suit in 2002. *EEOC v. Peabody Coal Co.* ("*Peabody I*"), 214 F.R.D. 549 (D. Ariz. 2002). We heard EEOC's appeal from that dismissal in *EEOC v. Peabody Western Coal Co.* ("*Peabody II*"), 400 F.3d 774 (9th Cir. 2005). We reversed, holding that it was feasible to join the Nation under Federal Rule of Civil Procedure 19 and that the suit did not present a nonjusticiable political question. On remand, the district court granted summary judgment to Peabody. EEOC appeals.

In this appeal, we address questions arising out of the joinder of two different parties. We first address the joinder of the Nation. We hold that the amended complaint filed by EEOC after our remand does not render it infeasible to join the Nation. We next address the joinder of the Secretary of the Interior ("the Secretary"). We hold that the Secretary is a required party under Rule 19(a), and that joining him is not feasible. We hold further that Peabody and the Nation may not bring a third-party damages claim against the Secretary under Federal Rule of Civil Procedure 14(a), and that EEOC's claim against Peabody for damages must therefore be dismissed under Rule 19(b). However, we hold that Peabody and the Nation may bring a third-party claim against the Secretary for prospective relief under Rule 14(a), and that EEOC's injunctive claim against Peabody should therefore be allowed to proceed.

We vacate the remainder of the district court's rulings and remand for further proceedings consistent with this opinion.

## I. Background

### A. Factual Background

Peabody mines coal at the Black Mesa Complex and Kayenta Mine on the Navajo and Hopi reservations in northeastern Arizona. Peabody does so pursuant to leases with the Navajo and Hopi tribes inherited from its predecessor-in-interest, Sentry Royalty Company ("Sentry"). This case involves two leases Sentry entered into with the Nation: a 1964 lease permitting it to mine on the Navajo reservation (lease no. 8580) and a 1966 lease permitting it to mine on the Navajo portion of land jointly used by the Navajo and Hopi nations (lease no. 9910).

Both leases require that Peabody provide an employment preference to Navajo job applicants. The 1964 lease provides that Peabody "agrees to employ Navajo Indians when available in all positions for which, in the judgment of [Peabody], they are qualified," and that Peabody "shall make a special effort to work Navajo Indians into skilled, technical and other higher jobs in connection with [Peabody's] operations under this Lease." The 1966 lease provides similarly, but also states that Peabody may "at its option extend the benefits of this Article [containing the Navajo employment preference] to Hopi Indians." We will refer to these provisions as "Navajo employment preference provisions." Many business leases on the Navajo reservation contain similar employment preferences for Navajo job applicants.

As we noted in *Peabody II*, the Department of the Interior ("DOI") approved both mining leases, as well as subsequent amendments and extensions, under the Indian Mineral Leasing Act of 1938 ("IMLA"). *Peabody II*, 400 F.3d at 776; *see* 25 U.S.C. §§ 396a, 396e; *see also United States v. Navajo Nation* ("*Navajo Nation I*"), 537 U.S. 488, 493 (2003) (explaining that DOI's approval is necessary before leases on reservation land become effective). Former Secretary of the

Interior Stewart Udall, who served as Secretary during the period the leases were drafted and approved, stated in a declaration submitted to the district court that DOI drafted the leases and required the inclusion of the Navajo employment preferences. This statement is undisputed. The leases provide that, if their terms are violated, both the Nation and the Secretary retain the power to cancel them after a notice and cure period. Amendments to the leases must be approved by the Secretary.

## B. Procedural Background

This is the latest in a series of cases involving Navajo employment preferences. *See Dawavendewa v. Salt River Project Agric. Improvement & Power Dist.* ("*Dawavendewa II*"), 276 F.3d 1150, 1163 (9th Cir. 2002); *Dawavendewa v. Salt River Agric. Improvement & Power Dist.* ("*Dawavendewa I*"), 154 F.3d 1117, 1124 (9th Cir. 1998). We discussed the history of Navajo employment preferences in detail in the first appeal in this case. *See Peabody II*, 400 F.3d at 777.

EEOC filed this suit against Peabody in June 2001, alleging that Peabody was unlawfully discriminating on the basis of national origin by implementing the Navajo employment preferences contained in the leases. EEOC's complaint charged that Peabody had refused to hire non-Navajo Indians including two members of the Hopi and one now-deceased member of the Otoe tribe, as well as unspecified other non-Navajo Indians, for positions for which they were otherwise qualified. EEOC alleged that such conduct violated Title VII, 42 U.S.C. § 2000e-2(a)(1), which prohibits employers from refusing to hire applicants because of their national origin. EEOC's position throughout this litigation has been that the Indian preference exception of Title VII, § 2000e-2(i), permits discrimination in favor of Indians living on or near a particular tribe's reservation, but does not permit discrimination against Indians who live on or near that reservation but are

members of another tribe. *Peabody II*, 400 F.3d at 777-78. EEOC alleged further that Peabody had violated the record-keeping requirements of § 2000e-8(c). EEOC requested three forms of relief: (1) an injunction prohibiting Peabody from continuing to discriminate on the basis of national origin and requiring Peabody to provide equal employment opportunities for non-Navajo Indians living on or near the Navajo reservation; (2) damages, including back pay with interest, compensatory damages, and punitive damages; and (3) an order requiring Peabody to make and preserve records in compliance with Title VII.

Peabody moved for summary judgment and for dismissal of the action. Peabody argued, first, that Rule 19 required dismissal because the Nation was a necessary and indispensable party to the action and, second, that the action presented a nonjusticiable political question between EEOC and DOI because DOI had approved the mining leases. The district court agreed and granted Peabody's motion to dismiss on both grounds. *Peabody I*, 214 F.R.D. at 559-63. The district court also dismissed EEOC's recordkeeping claim, even though Peabody had not sought dismissal of this claim. *Id.* at 563.

We reversed in *Peabody II*. First, we held that the Nation was a necessary party under Rule 19, but that EEOC's suit need not be dismissed because joinder of the Nation was feasible. *Peabody II*, 400 F.3d at 780-81. Because EEOC is an agency of the United States, the Nation could not assert sovereign immunity as a defense to joinder. Although EEOC lacked statutory authority to state a cause of action against the Nation, joinder of the Nation for the purposes of res judicata was still possible and would be effective in providing "complete relief between the parties." *Id.* at 781. Second, we held that EEOC's claim did not present a nonjusticiable political question. *Id.* at 784-85. Third, we held that the district court erred in dismissing EEOC's recordkeeping claim. *Id.* at 785. We remanded for further proceedings with the Nation joined under Rule 19. *Id.* at 785.

On remand, EEOC filed an amended complaint that included the same claims and prayer for relief as its initial complaint. The newly joined Nation moved to dismiss under Rule 19, arguing, *inter alia*, that EEOC's amended complaint impermissibly seeks affirmative relief against the Nation, and that the Secretary of the Interior is a necessary and indispensable party. Peabody filed its own motion to dismiss. *Inter alia*, it agreed with the Nation's argument that the Secretary was a necessary and indispensable party. This was the first time in this litigation that anyone had argued that the Secretary was a necessary and indispensable party.

The district court converted the motions to dismiss into motions for summary judgment. The district court granted summary judgment against EEOC, holding, in the alternative, that (1) EEOC was seeking affirmative relief against the Nation in its amended complaint, and that the Nation therefore could not be joined under Rule 19; (2) the Secretary was a necessary and indispensable party for whom joinder was not feasible; and (3) the Rehabilitation Act of 1950, 25 U.S.C. § 631-638, authorized the tribe-specific preferences challenged by EEOC. The district court also granted the Nation's motions to strike two EEOC exhibits and to strike an EEOC footnote reference. Finally, the court denied EEOC's motion to strike two forms upon which Peabody relied. EEOC timely appealed all of the district court's rulings.

We reach only holdings (1) and (2), as to which we reverse the district court. We vacate the rest of the court's decision and remand for further proceedings.

## II.   Standard of Review

We review a district court's decision on joinder for abuse of discretion, and we review the legal conclusions underlying that decision de novo. *Peabody II*, 400 F.3d at 778.

## III.   Discussion

**[1]**  This case continues to present somewhat complex compulsory party joinder issues. As we explained in *Peabody II*, Federal Rule of Civil Procedure 19 governs compulsory party joinder in federal district courts. In its recently amended form, Rule 19 provides, in relevant part:

(a) Persons Required to Be Joined if Feasible.

(1) Required Party.

A person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction must be joined as a party if:

(A) in that person's absence, the court cannot accord complete relief among existing parties; or

(B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:

(i) as a practical matter impair or impede the person's ability to protect the interest; or

(ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

(2) Joinder by Court Order.

If a person has not been joined as required, the court must order that the person be

made a party. A person who refuses to join as a plaintiff may be made either a defendant or, in a proper case, an involuntary plaintiff.

. . .

(b) When Joinder Is Not Feasible.

If a person who is required to be joined if feasible cannot be joined, the court must determine whether, in equity and good conscience, the action should proceed among the existing parties or should be dismissed. The factors for the court to consider include:

(1) the extent to which a judgment rendered in the person's absence might prejudice that person or the existing parties;

(2) the extent to which any prejudice could be lessened or avoided by:

(A) protective provisions in the judgment;

(B) shaping the relief; or

(C) other measures;

(3) whether a judgment rendered in the person's absence would be adequate; and

(4) whether the plaintiff would have an adequate remedy if the action were dismissed for nonjoinder. . . .

Fed. R. Civ. P. 19. Although the wording of Rule 19 has changed since the district court dismissed this case, its mean-

ing remains the same.[1] When dealing with the amended rule in this opinion, we will use the new language.

**[2]** A Rule 19 motion poses "three successive inquiries." *Peabody II*, 400 F.3d at 779. "First, the court must determine whether a nonparty should be joined under Rule 19(a)." *Id.* That nonparty (or "absentee") is now referred to as a "person required to be joined if feasible." If an absentee meets the requirements of Rule 19(a), "the second stage is for the court to determine whether it is feasible to order that the absentee be joined." *Id.* "Finally, if joinder is not feasible, the court must determine at the third stage whether the case can proceed without the absentee" or whether the action must be dismissed. *Id.* A nonparty in whose absence an action must be dismissed is one who "not only [has] an interest in the controversy, but [has] an interest of such a nature that a final decree cannot be made without either affecting that interest, or leaving the controversy in such a condition that its final termination may be wholly inconsistent with equity and good conscience." *Shields v. Barrow*, 58 U.S. 130, 139 (1855).

---

[1]As of December 1, 2007, Rule 19 no longer refers to "necessary" or "indispensable" parties. Instead, it refers to "persons required to be joined if feasible" and persons in whose absence, if they cannot be joined, the action should not proceed.

The advisory committee notes indicate that the 2007 amendments to the civil rules were merely stylistic. With respect to Rule 19, they state:

> The language of Rule 19 has been amended as part of the general restyling of the Civil Rules to make them more easily understood and to make style and terminology consistent throughout the rules. These changes are intended to be stylistic only.

> Former Rule 19(b) described the conclusion that an action should be dismissed for inability to join a Rule 19(a) party by carrying forward traditional terminology: "the absent person being thus regarded as indispensable." "Indispensable" was used only to express a conclusion reached by applying the tests of Rule 19(b). It has been discarded as redundant.

Fed. R. Civ. P. 19 advisory committee's note (2007).

With these principles in mind, we consider the Rule 19 joinder of both the Navajo Nation and the Secretary of the Interior.

### A.   Joinder of the Navajo Nation under Rule 19

**[3]** In *Peabody II*, we held that the Navajo Nation was a necessary party for whom joinder was feasible. *Peabody II*, 400 F.3d at 778. It is undisputed that the Nation was a necessary party, and is now, under the amended rule, a person required to be joined if feasible. As we explained in *Peabody II*, the Nation is a party to the leases whose employment preference is challenged in this lawsuit.

> If the EEOC is victorious in this suit but the Nation has not been joined, the Nation could possibly initiate further action to enforce the employment preference against Peabody, even though that preference would have been held illegal in this litigation. Peabody would then be, like the defendant in *Dawavendewa II*, 276 F.3d at 1156, "between the proverbial rock and a hard place — comply with the injunction prohibiting the hiring preference policy or comply with the lease requiring it." By similar logic, we have elsewhere found that tribes are necessary parties to actions that might have the result of directly undermining authority they would otherwise exercise.

*Id.* at 780. We held that it was feasible to join the Nation even though under Title VII no affirmative relief was available to EEOC against the Nation.

After our remand, EEOC amended its complaint to add the Nation as a defendant. The district court held that EEOC sought affirmative relief against the Nation in its amended complaint even though we had specifically held in *Peabody II* that such relief was not available. Under its reading of

EEOC's amended complaint, the district court dismissed EEOC's suit on the ground that the Nation could not, after all, be joined. For the reasons that follow, we hold that the district court should not have dismissed EEOC's amended complaint on this ground.

In *Peabody II*, Peabody made two arguments why joinder of the Nation was not feasible. We disagreed with both of them. First, Peabody argued that the Nation could not be joined because of sovereign immunity. *Id.* at 780. We held that the Nation's sovereign immunity did not shield it from a suit brought by EEOC and therefore did not bar its joinder. *Id.* at 781. We explained, "Tribal sovereign immunity does not 'act as a shield against the United States,' even when Congress has not specifically abrogated tribal immunity." *Id.* (quoting *United States v. Yakima Tribal Ct.*, 806 F.2d 853, 861 (9th Cir. 1986)).

**[4]** Second, Peabody argued that because Title VII exempts the Nation from the definition of employer, 42 U.S.C. § 2000e(b), EEOC could not state a claim against the Nation. *Peabody II*, 400 F.3d at 781. Therefore, Peabody argued, the Nation could not be joined in a suit brought by EEOC. But "a plaintiff's inability to state a direct cause of action against an absentee does not prevent the absentee's joinder under Rule 19." *Id.* An absentee can be joined under Rule 19 in order to subject it, under principles of res judicata, to the "minor and ancillary" effects of a judgment. *Gen. Bldg. Contractors Ass'n, Inc. v. Pennsylvania*, 458 U.S. 375, 399 (1982). We wrote that

> EEOC has no claim against the party it seeks to join and is not seeking any affirmative relief directly from that party. Joinder is necessary for the "sole purpose" of effecting complete relief between the parties . . . by ensuring that both Peabody and the Nation are bound to any judgment upholding or striking down the challenged lease provision.

*Peabody II*, 400 F.3d at 783.

On remand, the district court concluded that EEOC's amended complaint sought affirmative relief against the Nation. The district court found that "with the benefit of the filing of the Amended Complaint and limited discovery, it is apparent to this Court that the EEOC is not merely seeking relief against Peabody Coal, but all parties acting in concert with it, which includes the Navajo Nation." In so holding, the district court relied on the language in the amended complaint seeking "a permanent injunction enjoining Peabody . . . and all persons in active concert or participation with it, from engaging in discrimination on the basis of national origin." The court found that

> there can be no doubt that the Navajo Nation falls within the scope of affirmative relief sought by the EEOC. . . . Should the EEOC prevail in this suit and obtain the broad relief sought, the Navajo Nation would then be enjoined from implementing and requiring such lease provisions in the future as it would already be subject to injunctive relief from this Court based upon the determination that such provisions are contrary to Title VII. As such, there can be little doubt that the EEOC seeks affirmative relief not only against Peabody Coal but the Navajo Nation as well.

> The language added to the amended complaint provides, in its entirety:

> Defendant Navajo Nation is a party to a lease agreement with the Defendant employer, Peabody Coal Company, and is therefore named as a party pursuant to Rule 19(a) of the Federal Rules of Civil Procedure, in that, in its absence, complete relief cannot be accorded among those already parties, and it has an interest in the subject of this action.

This added language says nothing about any kind of relief against the Nation.

The original complaint was before us when we decided *Peabody II*. The language in the amended complaint upon which the district court relied to conclude that EEOC was seeking affirmative relief is word-for-word the same as in the original complaint. It is, in its entirety:

> Wherefore, the Commission respectfully requests that this Court:
>
> A. Grant a permanent injunction enjoining Peabody, its officers, successors, assigns, and all persons in active concert or participation with it, from engaging in discrimination on the basis of national origin.

Some of this added language is standard boilerplate drawn from Rule 65(d)(2)(C), describing the "persons bound" by "every injunction" as including "other persons who are in active concert or participation" with the party or parties served with an injunction.

There are two possible readings of the amended complaint. Under one reading, EEOC is not seeking any injunctive relief against the Nation. The Nation is "bound" by the injunction only in the sense that it is res judicata as to the Nation, not in the sense that the injunction affirmatively requires the Nation to do something. In our view, this is the better reading of the boilerplate language in the complaint, given that the explicit premise of our holding in *Peabody II* was that EEOC has no cause of action against the Nation under Title VII and that, as a necessary corollary, EEOC can obtain no injunctive relief against the Nation. However, the district court did not adopt this reading.

[5] Under the reading adopted by the district court, EEOC sought injunctive relief against the Nation in its amended

complaint. Even if this is the correct reading, the district court nonetheless erred in dismissing EEOC's suit. Because we had held in *Peabody II* that joinder of the Nation was feasible despite the unavailability of injunctive relief against it, the proper response of the district court would have been simply to deny EEOC's request for injunctive relief. As we held in *Peabody II*, joinder of the Nation is feasible, and dismissal under Rule 19 is not required even though injunctive relief is unavailable.

**[6]** The district court therefore erred in dismissing EEOC's complaint on the ground that it sought injunctive relief against the Nation.

B.   Joinder of the Secretary of the Interior under Rule 19

**[7]** On remand from *Peabody II*, Peabody and the newly joined Nation argued under Rule 19 that the suit could not proceed without joinder of the Secretary. Even though Peabody had been a defendant in the suit from the outset, this was the first time it made this argument. Because the Nation had just been joined, this was its first opportunity to make the argument. We agree with Peabody and the Nation that the Secretary is a person to be joined if feasible under Rule 19. But we do not agree that the entirety of EEOC's suit must be dismissed.

**[8]** The central problem is that Peabody is caught in the middle of a dispute not of its own making. EEOC contends that the Navajo employment preference provision contained in the leases violates Title VII. The Secretary required that this provision be included in the leases. EEOC seeks damages and an injunction against Peabody, which has complied with the lease terms upon which the Secretary insisted.

If the district court were to hold that the Navajo employment preference provision violates Title VII and to award damages against Peabody, it would be profoundly unfair if

Peabody could not seek indemnification from the Secretary. It would be similarly unfair if the district court were to grant an injunction requiring Peabody to disregard the preference provision, but leaving the Secretary free, despite the court's holding, to insist that Peabody comply with it.

The same is true, though to a lesser extent, for the Nation. As we held in *Peabody II*, EEOC can obtain neither damages nor injunctive relief against the Nation. But if the district court holds that the employment preference provision violates Title VII, the Nation will be bound to that result by res judicata. If the Secretary is not made a party to the suit, he may ignore the court's judgment and place conflicting demands upon the Nation who will be required by res judicata to honor the judgment.

### 1. The Secretary as a Required Party under Rule 19(a)

A person is required to be joined if feasible under Rule 19(a)(1)(A) if, "in that person's absence, the court cannot accord complete relief among the existing parties" or under Rule 19(a)(1)(B) if "that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may: (i) as a practical matter impair or impede the person's ability to protect the interest; or (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest." "There is no precise formula for determining whether a particular nonparty should be joined under Rule 19(a). . . . The determination is heavily influenced by the facts and circumstances of each case." *N. Alaska Envtl. Ctr. v. Hodel*, 803 F.2d 466, 468 (9th Cir. 1986) (quoting *Bakia v. County of Los Angeles*, 687 F.2d 299, 301 (9th Cir. 1982) (per curiam)) (alterations in original). The Secretary meets the standards of both Rule 19(a)(1)(A) and Rule 19(a)(1)(B).

**[9]** First, under Rule 19(a)(1)(A), in the absence of the Secretary, the district court cannot accord complete relief

among the existing parties. The record makes clear that the Secretary insisted that the disputed employment preference provision be included in the leases between Peabody and the Nation, and that the Secretary is ultimately responsible for its continued inclusion in the leases. If EEOC prevails in its interpretation of Title VII, it may recover damages from Peabody based on Peabody's compliance with the employment preference provision. In that event, Peabody will be obliged to pay damages for having engaged in conduct that was mandated by the Secretary. If the Secretary is not made a party, Peabody will not be able to seek indemnification from the Secretary.

Further, if EEOC prevails it may obtain an injunction ordering Peabody to disregard the employment preference provision. The Secretary has the power, if the lease terms are violated, to cancel the leases after a notice and cure period, and Peabody is unable to modify the terms of the leases without the approval of the Secretary. If the Secretary is not made a party, Peabody may be obliged by the court to disregard the preference provision, while the Secretary would remain free to insist that Peabody honor it, upon pain of losing the leases. *See, e.g.*, *Associated Dry Goods Corp. v. Towers Fin. Corp.*, 920 F.2d 1121, 1124 (2d Cir. 1990) (holding that landlord was required party in suit brought by tenant against subtenant, as subtenant would not be able to obtain complete relief in counterclaims against tenant for increased electrical capacity without approval of landlord); *Wymbs v. Republican State Executive Comm.*, 719 F.2d 1072, 1080 (11th Cir. 1983) (holding that national political party committee was required party in suit on the constitutionality of a local political party's delegate selection rule when the local rule was derived from the national rule and the national party still had the ability to determine which delegates would be seated).

**[10]** Second, under Rule 19(a)(1)(B), the Secretary has an interest in the subject matter of this action. Resolving this action in the Secretary's absence may both impair the Secre-

tary's ability to protect that interest and leave Peabody and the Nation subject to a substantial risk of incurring inconsistent obligations. If the Secretary is not joined, he will be unable to defend his interest in the legality of the lease provisions. We have repeatedly held that "[n]o procedural principle is more deeply imbedded in the common law than that, in an action to set aside a lease or a contract, all parties who may be affected by the determination of the action are indispensable." *Lomayaktewa v. Hathaway*, 520 F.2d 1324, 1325 (9th Cir. 1975); *see also Dawavendewa II*, 276 F.3d at 1156.

**[11]** Although *Lomayaktewa* and *Dawavendewa II* involved parties who were signatories to a contract, which the Secretary is not, the underlying principle applies here. The Secretary mandated the provisions and continues to exercise oversight over the leases. A public entity has an interest in a lawsuit that could result in the invalidation or modification of one of its ordinances, rules, regulations, or practices. *See, e.g.*, *Davis v. United States*, 192 F.3d 951, 959 (10th Cir. 1999) (holding that Seminole Nation of Oklahoma was necessary party as a ruling on the merits would modify the Nation's ordinances); *Ricci v. State Bd. of Law Exam'rs*, 569 F.2d 782, 784 (3d Cir. 1978) (holding that Pennsylvania Supreme Court was indispensable party to an action that would, if succeeded, invalidate one of the Court's rules of admission). The Secretary thus has an interest in an action that would require him to modify the terms of leases he approves for entities conducting business on the Navajo reservation. The Secretary therefore qualifies as a person to be joined under Rule 19(a)(1)(B)(i).

If the Secretary is not made a party and if EEOC prevails, the Secretary may choose to cancel the leases or to modify them to eliminate the Navajo employment preference. Alternatively, the Secretary may choose to continue the leases in their current form, ignoring the judgment in the case to which he has not been made a party. If the Secretary chooses to do this, he will put both Peabody and the Nation "between the

proverbial rock and a hard place," *Peabody II*, 400 F.3d at 780 (quoting *Dawavendewa II*, 276 F.3d at 1156), forcing them to choose between complying with the injunction or risking cancellation of the leases for violating terms mandated by the Secretary. The Secretary therefore qualifies as a person to be joined under Rule 19(a)(1)(B)(ii).

EEOC argues that the Secretary is not a person required to be joined under Rule 19(a), citing to the *Navajo Nation* line of cases decided by the Supreme Court. In these cases, the Court held that the DOI did not owe a fiduciary duty to the Navajo Nation in managing, negotiating, or approving leases under the statutes at issue in this litigation, and that the Nation therefore could not state a cause of action against DOI for breach of fiduciary duty. *United States v. Navajo Nation* ("*Navajo Nation II*"), 129 S. Ct. 1547, 1558 (2009) (holding that the Navajo-Hopi Rehabilitation Act of 1950 and Surface Mining Control and Reclamation Act of 1977 do not provide a cause of action to the Navajo Nation against the United States for breach of trust in its approval of coal mining leases); *Navajo Nation I*, 537 U.S. at 506 (holding the same for the IMLA). These cases indicate the limits of DOI's fiduciary duty to the Nation with respect to the leases, but they say nothing about whether DOI possesses a cognizable interest in the outcome of litigation challenging lease terms mandated by the Secretary.

**[12]** We therefore hold that the Secretary is a person required to be joined if feasible under Rule 19(a)(1)(A) and Rule 19(a)(1)(B).

### 2.   Feasibility of Joining the Secretary

Rule 19(a) contemplates that a required party be joined as either a plaintiff or defendant. In the posture of this suit, the Secretary would be joined as defendant rather than a plaintiff. However, we conclude that EEOC cannot join the Secretary as a defendant.

**[13]** EEOC is prevented by 42 U.S.C. § 2000e-5(f)(1) from filing suit against the Secretary on its own authority. Section 2000e-5(f)(1) provides that if EEOC is not able to obtain a conciliation agreement with a governmental agency, it cannot itself bring suit against that agency. Instead, § 2000e-5(f)(1) provides that if EEOC is unable to obtain an agreement, it "shall take no further action and shall refer the case to the Attorney General who may bring a civil action against such respondent in the appropriate United States district court." We were told at oral argument by EEOC's attorney that EEOC has no expectation that the Attorney General will file suit against the Secretary. While there is no evidence in the record of a formal referral to and refusal by the Attorney General, we assume for purposes of our decision that the Attorney General either has refused or will refuse to file suit against the Secretary.

### 3.   Dismissal "In Equity and Good Conscience"

**[14]** If a required party under Rule 19(a) cannot be joined as a plaintiff or defendant, we look to the factors provided in Rule 19(b) to determine whether, "in equity and good conscience, the action should proceed among the existing parties or should be dismissed." Fed. R. Civ. P. 19(b). Rule 19(b) provides four factors that we must consider in making this determination: (1) the extent to which a judgment rendered in the person's absence might prejudice that person or the existing parties; (2) the extent to which any prejudice could be lessened or avoided by shaping the judgment or the relief; (3) whether a judgment rendered in the person's absence would be adequate; and (4) whether the plaintiff would have an adequate remedy if the action were dismissed. *Id.* The heart of this inquiry is the question of "equity and good conscience." *See Provident Tradesmens Bank & Trust Co. v. Patterson*, 390 U.S. 102, 125 (1968); *Dawavendewa II*, 276 F.3d at 1161. "The inquiry is a practical one and fact specific . . . and is designed to avoid the harsh results of rigid application."

*Makah Indian Tribe v. Verity*, 910 F.2d 555, 558 (9th Cir. 1990) (internal citations omitted).

For the reasons that follow, we conclude that EEOC's claim for damages against Peabody must be dismissed under Rule 19(b), but that its claim for an injunction against Peabody should be permitted to proceed.

### a.   EEOC's Claim for Damages

**[15]** If EEOC's suit against Peabody were allowed to proceed, the district court would almost certainly award damages against Peabody if it concludes that the Navajo employment preference provision violates Title VII. In that event, Peabody would quite reasonably look to the Secretary for indemnification, given that the preference provision was included in the leases at the insistence of the Secretary. Rule 14(a) would permit Peabody to file a third-party complaint against the Secretary for indemnification. But because Peabody's indemnification suit would seek damages, it would be barred by the government's sovereign immunity unless that immunity is waived by statute. We can find no waiver of sovereign immunity to such a suit.

**[16]** The Tucker Act, 28 U.S.C. § 1346(a)(2), waives the government's sovereign immunity in damage suits based on contract, as well as for some claims arising under the Constitution and statutes of the United States. Under the Tucker Act, a party's claims must either rest upon a contract, "seek the return of money paid by them to the Government," or establish an entitlement to money damages under a federal statute that " 'can fairly be interpreted as mandating compensation by the Federal Government for the damage sustained.' " *United States v. Testan*, 424 U.S. 392, 400 (1976) (quoting *Eastport S.S. Corp. v. United States*, 372 F.2d 1002, 1009 (Ct. Cl. 1967)); *see also Lake Mohave Boat Owners Ass'n v. Nat'l Park Serv.*, 78 F.3d 1360, 1365 (9th Cir. 1995). The Federal Tort Claims Act, 28 U.S.C. § 1346(b), waives the sovereign

immunity of the United States for suits in tort. *See FDIC v. Meyer*, 510 U.S. 471, 477 (1994). However, neither the Tucker Act nor the Federal Tort Claims Act waives the government's sovereign immunity in the circumstances of this case.

[17] Title VII also waives the government's sovereign immunity to some extent. Based on that waiver, a federal employee may sue the government for damages under Title VII, provided that administrative remedies with EEOC have been exhausted. 42 U.S.C. § 2000e-16(c); *see Library of Cong. v. Shaw*, 478 U.S. 310, 319 ("Congress waived the Government's immunity under Title VII as a defendant, affording federal employees a right of action against the Government for its discriminatory acts as an employer."); *cf. Fitzpatrick v. Bitzer*, 427 U.S. 445 (1976) (Title VII abrogates the states' sovereign immunity). But we can find nothing in Title VII that waives the government's sovereign immunity to a damages suit brought by a private employer that has itself violated Title VII.

[18] Peabody's only sin, if indeed it was a sin, was to comply with an employment preference provision inserted in its lease at the insistence of the Secretary. It would be profoundly unfair for a court to award damages against Peabody while allowing Peabody no redress against the government. We are unable to see any way to mitigate this unfairness by, for example, "protective provisions in the judgment; . . . shaping relief; or . . . other measures." Fed. R. Civ. P. 19(b)(2)(A-C). We therefore conclude that "in equity and good conscience" EEOC's damages claim against Peabody must be dismissed under Rule 19(b).

### b. EEOC's Claim for an Injunction

If EEOC's suit is allowed to proceed and if the district court were to hold that the Navajo employment preference provision violates Title VII, the district court would almost

certainly grant an injunction requiring Peabody to ignore the provision in making its employment decisions. This injunction would not only require Peabody to take certain actions; it would also operate as res judicata against the Nation. In the event such an injunction were issued, Peabody and the Nation would quite reasonably want to seek prospective relief preventing the Secretary from enforcing the provision. Rule 14(a) would permit Peabody and the Nation to file a third-party complaint seeking such relief against the Secretary. Sovereign immunity does not bar prospective injunctive relief against the Secretary. We conclude that the availability of prospective relief through a third-party complaint under Rule 14(a) means that "in equity and good conscience" EEOC's suit against Peabody should be permitted to proceed.

### i.     Sovereign Immunity

[19]  A claim to which sovereign immunity is not a defense may be entertained even if another claim in the suit is dismissed because of sovereign immunity. *See, e.g.*, *United States v. Georgia*, 546 U.S. 151, 159 (2006) (finding sovereign immunity of state was not a bar to some of the plaintiffs' claims and remanding to the district court to allow suit to proceed for any claims that were not shielded by sovereign immunity). Therefore, the district court may entertain Peabody and the Nation's third-party claim for prospective relief if it is not barred by the United States' sovereign immunity, even if a Peabody claim for damages would have to be dismissed.

[20] Prospective relief requiring, or having the effect of requiring, governmental officials to obey the law has long been available. Sovereign immunity does not bar such relief. The case often cited for this proposition is *Ex parte Young*, 209 U.S. 123 (1908), which permitted an injunction against the Attorney General of Minnesota despite the Eleventh Amendment. The *Ex parte Young* fiction remains the basis for prospective relief against state officers. For example, in *Veri-*

*zon Maryland, Inc. v. Public Service Commission*, 535 U.S. 635 (2002), the Supreme Court allowed injunctive and declaratory relief against individual state officials despite the Eleventh Amendment.

For a number of years, prospective relief against federal officials was available under the fiction of *Ex parte Young*. For example, in *Larson v. Domestic & Foreign Commerce Corp.*, 337 U.S. 682 (1949), the Supreme Court allowed prospective relief against a federal official despite an asserted defense of sovereign immunity. The Court wrote:

> There may be, of course, suits for specific relief against officers of the sovereign which are not suits against the sovereign. If the officer purports to act as an individual and not as an official, a suit directed against that action is not a suit against the sovereign. . . . [W]here the officer's powers are limited by statute, his actions beyond those limitations are considered individual and not sovereign actions. The officer is not doing the business which the sovereign has empowered him to do or he is doing it in a way which the sovereign has forbidden. His actions are *ultra vires* his authority and therefore may be made the object of specific relief.

*Id.* at 689. We explicitly followed the "legal fiction" described in *Larson* in *Washington v. Udall*, 417 F.2d 1310, 1314 (9th Cir. 1969), and did so again in *Rockbridge v. Lincoln*, 449 F.2d 567, 572-73 (9th Cir. 1971).

However, since 1976 federal courts have looked to § 702 of the Administrative Procedure Act ("APA"), 5 U.S.C. § 702, to serve the purposes of the *Ex parte Young* fiction in suits against federal officers. In *Presbyterian Church (U.S.A.) v. United States*, 870 F.2d 518 (9th Cir. 1989), we explained that after § 702 was amended in 1976, it replaced the *Ex parte*

*Young* fiction as the doctrinal basis for a claim for prospective relief. We wrote:

> It is particularly significant that [in enacting § 702 of the APA] Congress referred disapprovingly to the *Ex parte Young* fiction, which permitted a plaintiff to name a government official as the defendant in equitable actions to redress government misconduct, on the pretense that the suit was not actually against the government. By invoking the *Young* fiction plaintiffs could, even before Congress amended § 702 in 1976, maintain an action for equitable relief against unconstitutional government conduct, whether or not such conduct constituted "agency action" in the APA sense. *See*, *e.g.*, *Larson v. Domestic & Foreign Commerce Corp*. . . . *Congress' plain intent in amending § 702 was to waive sovereign immunity for all such suits, thereby eliminating the need to invoke the* Young *fiction.*

*Id.* at 525-26 (citations omitted) (emphasis added).

In *Presbyterian Church* we wrote, "On its face, the 1976 amendment [to § 702] is an unqualified waiver of sovereign immunity in actions seeking nonmonetary relief against legal wrongs for which governmental agencies are accountable." 870 F.2d at 525. We explained that the waiver is not limited to judicial review in suits challenging "agency action" as defined in the APA, but instead covers "all actions seeking relief from official misconduct except for money damages." *Id.* In *Gallo Cattle Co. v. United States Department of Agriculture*, 159 F.3d 1194 (9th Cir. 1998), we stated that "the APA's waiver of sovereign immunity contains several limitations," including the "final agency action" requirement that we had considered irrelevant in *Presbyterian Church*. *Id.* at 1198. We held that, because the plaintiffs failed to challenge "final agency action," the waiver of sovereign immunity did not apply. *Id.* In *Gros Ventre Tribe v. United States*, 469 F.3d

801 (9th Cir. 2006), we discussed but declined to resolve the tension between the two cases, observing that there is "no way to distinguish *The Presbyterian Church* from *Gallo Cattle*." *Id.* at 809.

**[21]** We similarly need not resolve this tension here. Unlike in *Gallo Cattle*, there is final agency action in this case, because the Secretary has mandated the disputed lease terms. "Agency action" under the APA is defined as "the whole or a part of an agency rule, order, license, sanction, relief, or the equivalent or denial thereof, or failure to act." 5 U.S.C. § 551(13). "Persons" entitled to judicial review under the APA include "an individual, partnership, corporation, association, or public or private organization other than an agency." 5 U.S.C. § 701(b)(2) (providing that, for purposes of provisions on judicial review, definition of "person" in 5 U.S.C. § 551 applies); *id.* § 551 (providing definition of "person"). Both Peabody and the Navajo Nation come within this definition of "person." Peabody is a corporation, and the Nation is a "public organization." *Id.* Therefore, under § 702 of the APA, as would be the case under the *Ex parte Young* fiction, either Peabody or the Nation may assert a claim against the Secretary requesting injunctive or declaratory relief. We therefore conclude that neither Peabody nor the Nation is barred by sovereign immunity from bringing a third-party complaint seeking prospective relief against the Secretary under Rule 14(a).

### ii.    Third-party Complaints under Rule 14(a)

**[22]** If a required party under Rule 19(a) cannot be joined as a plaintiff or defendant, the court must determine whether under Rule 19(b) the action must be dismissed "in equity and good conscience." Among the factors to be considered in making that determination is whether, under Rule 19(b)(2)(C), "measures" may be taken that would lessen or avoid any prejudice. To the degree that Peabody and the Nation may be prejudiced by the absence of the Secretary as

a plaintiff or defendant, that prejudice may be eliminated by a third-party complaint against the Secretary under Rule 14(a).

**[23]** The courts of appeals that have addressed the question are unanimous in holding that if an absentee can be brought into an action by impleader under Rule 14(a), a dismissal under Rule 19(b) is inappropriate. In *Pasco International (London) Ltd. v. Stenograph Corp.*, 637 F.2d 496 (2d Cir. 1980), the Second Circuit repeatedly indicated that prejudice to existing parties could be eliminated by impleader under Rule 14(a). The court wrote, "Stenograph can always protect itself from the possibility of inconsistent verdicts by impleading Croxford under Rule 14[.] . . . [T]he existence of the Rule 14 provisions demonstrates that parties such as Croxford who may be impleaded under Rule 14 are not indispensable parties within Rule 19(b)." *Id.* at 503. It summarized, "[A]ll persons subject to impleader by the defendant are not indispensable parties. This is . . . merely an extension of the settled doctrine that Rule 19(b) was not intended to require the joinder of persons subject to impleader under Rule 14 such as potential indemnitors." *Id.* at 505 n.20. The other circuits that have addressed the question have come to the same conclusion. *See*, *e.g.*, *Boone v. General Motors Acceptance Corp.*, 682 F.2d 552, 553 (5th Cir. 1982) (defendants "could protect their interests by joining the dealer as a third party should they care to do so"); *Challenge Homes, Inc. v. Greater Naples Care Ctr., Inc.*, 669 F.2d 667, 671 (11th Cir. 1982) (defendant "may protect itself against [prejudice] by impleading [the absent person] under Rule 14").

### c.   Summary

**[24]** We conclude that prospective relief in the form of an injunction or declaratory judgment is available in a Rule 14(a) impleader against the Secretary. Such prospective relief against the Secretary is enough to protect Peabody and the Nation, both with respect to EEOC's request for injunctive

relief against Peabody and with respect to any res judicata effect against the Nation. Such relief would also protect the Secretary because, once brought in as a third-party defendant, he will be able to defend his position on the legality of the leases. We therefore conclude, "in equity and good conscience," that EEOC's claim against Peabody for injunctive relief should be allowed to proceed.

## C.   Remaining Issues

EEOC has appealed the district court's various other rulings, including its holding that the Navajo employment preference does not violate Title VII. We vacate all of these rulings to allow reconsideration once the Secretary has been brought into the suit as a third-party defendant. This will allow the court to consider the arguments of the Secretary on the legality of the employment preferences before issuing a final ruling. We note, further, that the presentation of the Secretary's views in the district court, and the district court's considered ruling taking those views into account, will be useful to us in the event of a further appeal.

## Conclusion

We again hold that joinder of the Navajo Nation under Rule 19 is feasible. We hold that the Secretary of the Interior is a party required to be joined if feasible under Rule 19(a), but that joinder of the Secretary as a defendant is not feasible. We hold that EEOC's damages claim against Peabody must be dismissed under Rule 19(b). Finally, we hold that EEOC's injunctive claim against Peabody should be allowed to proceed. We vacate the other rulings of the district court and remand for further proceedings consistent with this opinion.

**REVERSED in part and VACATED in part**. Each party to bear its own costs.