FILED
United States Court of Appeals
Tenth Circuit

May 26, 2015

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

DELMART E.J.M. VREELAND, II,

Plaintiff - Appellant,

v.

CELIA SCHWARTZ, Legal Assistant II,
Colorado Department of Corrections,
Buena Vista Correctional Facility;
COLORADO DEPARTMENT OF
CORRECTIONS,

Defendants - Appellees.

No. 14-1241
(D.C. No. 1:13-CV-03515-LTB)
(D. Colo.)

**ORDER AND JUDGMENT**[*]

Before **HARTZ**, **McKAY**, and **McHUGH**, Circuit Judges.

Delmart E.J.M. Vreeland, II, a Colorado prisoner, appeals from the dismissal

of his pro se civil-rights complaint alleging retaliation and denial of access to the

courts. The district court dismissed his complaint and this action as legally frivolous

under 28 U.S.C. § 1915(e)(2)(B). We affirm in part, reverse in part, and remand.

---

[*] After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist the determination of this
appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore
ordered submitted without oral argument. This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and collateral
estoppel. It may be cited, however, for its persuasive value consistent with
Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

# BACKGROUND

The claims in Mr. Vreeland's first amended complaint arise out of an earlier case filed by him in federal district court, *Vreeland v. Griggs*, No. 12-cv-01921-PAB-KMT. In that case he alleged that officials at the Buena Vista Correctional Facility (BVCF) had illegally opened his private legal mail. One of the defendants was Celia Schwartz, a legal assistant at BVCF. Mr. Vreeland claims that after he named her in the prior complaint she began retaliating against him by denying him access to CD and VCR recordings and refusing to allow him to copy pleadings. He also claims that this conduct deprived him of his right of access to the courts.

The CD recordings allegedly were of telephone conversations involving Mr. Vreeland and a codefendant while they were incarcerated in Iowa before he was tried on charges in Colorado. According to Mr. Vreeland, their jailers made thousands of recordings of telephone calls concerning his criminal case, including calls in which the police attempted to get his codefendant to change his story and testify against Mr. Vreeland, and conversations between Mr. Vreeland and his lawyers. He listened to as many of the recordings as he could for 24 hours before his trial. He asserts that the CDs containing the calls eventually were sealed by a Colorado court because their contents are privileged. The VCR tapes allegedly contain recordings of interviews between police officers and victims or witnesses.

Mr. Vreeland says that he needs access to the CD and VCR recordings to pursue postconviction proceedings in state and federal courts in Colorado, Michigan, and Florida.[1] He alleges, however, that when he asked Ms. Schwartz how he could obtain access to the recordings without allowing prison personnel to review them (in violation of his attorney-client privilege), she responded that "she was not giving him any access to anything," and she "commented about the fact that [he] had named her as a defendant in the [*Griggs*] case." R., Vol. 1 at 72.

Mr. Vreeland then submitted an informal grievance asking "how he could review the materials without them being listened to." *Id.* Ms. Schwartz allegedly responded to the grievance by placing certain conditions on his access to the recordings: he could "only receive [four] CDs at a time; [any VCR] tapes must be converted to (DVD) [format]; and the materials must be perused for security content." *Id.* at 73. She suggested that Mr. Vreeland obtain assistance from his attorney in reviewing the recordings and complying with these conditions.

---

[1] Mr. Vreeland claims that the recordings would enable him to prove the following: (1) that contrary to their representations at trial, agents of the state had offered his codefendant a deal to testify against him; (2) that the state attempted to obtain perjured testimony from other witnesses against him; (3) that the state had improperly listened to calls between him and his attorney, and had used privileged information against him at trial; (4) that convictions in Florida and Michigan had improperly been used to enhance his sentence in Colorado, in violation of his plea agreements with authorities in those states; (5) that the trial judge had not previously reviewed all of the VCR tapes as he said he had; and (6) that Mr. Vreeland's statement to law enforcement should have been excluded because he invoked his right to counsel. He also claims, without providing specifics, that information on the recordings would have allowed him to impeach agents of and witnesses for the state.

Mr. Vreeland objected in a formal grievance that he could not afford the cost of having an attorney review the recordings; that he could not force the state of Colorado to convert the VCR tapes to DVD format; and that having BVCF staff review the recordings for security content would violate his attorney-client privilege. According to the first amended complaint, Ms. Schwartz again replied that he could not view the VCR tapes unless they were converted to DVD format and that if the recordings could not be reviewed for security content, they would not be allowed into the facility. Mr. Vreeland then filed appeals of his grievances through two additional levels and received essentially the same response.

The copying claim concerns an amended complaint that Mr. Vreeland was ordered to file in the *Griggs* case by March 22, 2013. Because Ms. Schwartz was a named defendant, he was given permission to have copies of his amended complaint made by his case manager instead of Ms. Schwartz. But when he handed his pleadings to the case manager on March 21, Ms. Schwartz "grabbed the pleadings, saw her name on them, and then denied [Mr. Vreeland] copies of legal pleadings" because she said he "was over the legal access program limitations for copies of a § 1983 complaint." *Id.* at 75. He asserts that Ms. Schwartz's refusal to permit copying "frustrated [his] filing of the Amended Complaint" and required him to "prepare additional pleadings to the Court to explain why the Defendants were not served," which "cost [him] money." *Id.* at 76. He filed grievances complaining that Ms. Schwartz had retaliated against him and that the policy she purported to apply to

limit the number of copies he could purchase "violates . . . both the federal and State of Colorado Constitutions." *Id.* His grievances were denied.

The district court determined that Mr. Vreeland's access-to-the-courts claim failed because such claims protect only an inmate's preparation of initial pleadings in a civil-rights action or an application for a writ of habeas corpus. Mr. Vreeland's claims involving access to recordings did not meet this standard because (1) he failed to assert that denial of access to the recordings made him unable to initiate a motion for postconviction relief in Colorado state court; (2) his previous 28 U.S.C. § 2254 motion (which was dismissed for failure to exhaust state remedies) demonstrated his ability to present in Colorado state court a nonfrivolous, sufficiently pleaded claim based on the recordings; and (3) his allegations concerning proceedings in Michigan and Florida were conclusory and vague, and he failed to show that the denial of the recordings prevented him from filing appellate or postconviction proceedings in those states. The court dismissed Mr. Vreeland's retaliation claims because he "fail[ed] to assert an injury or that he has been unable to continue filing grievances or a civil complaint against [Ms.] Schwartz." R., Vol. 1 at 120. And the court dismissed Mr. Vreeland's constitutional challenge to the Department of Corrections policy restricting the number of photocopies an inmate may purchase for legal pleadings because he had no *per se* constitutional right to photocopies, and because he failed to assert an actual injury resulting from the denial of photocopies.

## ANALYSIS

### 1.  Standard of Review

Mr. Vreeland proceeded in forma pauperis (IFP) in district court.  The IFP statute instructs courts to dismiss the complaint or appeal of a party proceeding IFP "at any time if the court determines that . . . the action or appeal is frivolous or malicious."  28 U.S.C. § 1915(e)(2)(B)(i).  A claim is frivolous "if it lacks an arguable basis either in law or in fact."  *Fogle v. Pierson*, 435 F.3d 1252, 1259 (10th Cir. 2006) (internal quotation marks omitted).  We generally review a district court's dismissal for frivolousness for an abuse of discretion.  *See id.*  But issues of law are reviewed *de novo*."  *See id.*

### 2.  Case Assignment Procedure

Mr. Vreeland first argues that the district judge assigned to this case lacked "jurisdiction" over it.  He claims that this case should have been assigned to a different judge under a local procedural rule regarding repeat pro se litigants.  The local rule he cites, Colo. L. Civ. R. 40.1(c)(1), plainly is designed to further judicial economy, order, and convenience rather than to control a judge's authority to hear a case.  Moreover, because there is no question of subject-matter jurisdiction, Mr. Vreeland has forfeited any objection he may have had to the judicial assignment by not presenting his objection until appeal.  *See Richison v. Ernest Grp., Inc.*, 634 F.3d 1123, 1127-28 (10th Cir. 2011).

- 6 -

### 3. Forced Waiver of Attorney-Client Privilege

Mr. Vreeland contends that the district court failed to consider that Ms. Schwartz's actions forced him to choose between either waiving his attorney-client privilege by permitting prison officials to review the recordings, or losing his right to review the evidence and to present his case on postconviction review. Requiring him to choose, he asserts, denied him his First Amendment right of access to the courts.

This court has discussed two types of prisoner claims asserting denial of the right of access to the courts. Both require a showing of actual injury—that is, that the defendant's actions hindered the prisoner's ability to proceed with an actual, nonfrivolous claim. *See generally Lewis v. Casey*, 518 U.S. 343, 351-52 (1996) (requiring showing of actual injury to support access-to-courts claim). Mr. Vreeland's complaint fails to satisfy the actual-injury requirement under either theory.

The first type of access-to-the-courts claim concerns a prison's duty "to provide affirmative assistance in the preparation of legal papers." *Cohen v. Longshore*, 621 F.3d 1311, 1317 (10th Cir. 2010) (internal quotation marks omitted). This claim is limited in scope; it requires only that the prison provide tools "that the inmates need in order to attack their sentences directly or collaterally, and in order to challenge the conditions of their confinement." *Lewis*, 518 U.S. at 355. A state is not required, however, to provide such legal assistance "beyond the preparation of

initial pleadings." *Carper v. DeLand*, 54 F.3d 613, 617 (10th Cir. 1995). We agree with the district court that Mr. Vreeland failed to allege a sufficient actual injury under this type of access-to-the-courts claim. He fails to adequately allege that he could not properly prepare a petition for postconviction relief without the "assistance" of direct and unconditional access to the recordings. In particular, he does not explain why the allegations in his prior § 2254 application would be insufficient if asserted in a Rule 35(c) petition.

The second type of denial-of-access claim sweeps more broadly. It prohibits conduct that unduly hinders litigation at any stage of the proceedings. *See Cohen*, 621 F.3d at 1317 (addressing access-to-courts claim based on prison mail clerk's refusal to send prisoner's legal mail, which allegedly prevented prisoner from filing objections to magistrate judge's recommendations). Mr. Vreeland's complaint and his appellate briefing could be read to allege this type of claim. He asserts that in his various litigation he must locate and create a record concerning the relevant calls, something he cannot do without access to the recordings, which the prison is preventing.

These allegations do not, however, adequately state a claim. Mr. Vreeland has failed to allege an actual, nonspeculative injury.

With respect to his postconviction proceedings in Florida and Michigan, Mr. Vreeland asserts only that the recordings reveal breaches of his plea agreements in those states. But without more specifics, we cannot discern how those recordings

would be relevant to a plausible claim for relief in those states. Hence, his claims of interference with access to courts in those states must fail.

Turning to Mr. Vreeland's Colorado Rule 35(c) proceedings, he has not shown how prison restrictions on his access to the recordings would impair his litigation if he has a nonfrivolous claim. Contrary to his assertions that he has no right to counsel in his Rule 35(c) proceeding, he would be entitled to the assistance of counsel in reviewing the recordings if he filed a nonfrivolous complaint. When a defendant files a Rule 35(c) motion, the court must "promptly review" it and determine whether it sufficiently alleges a claim that should be allowed to proceed. *See* Colo. R. Crim. P. 35(c)(3)(IV). If the motion passes muster, the defendant is entitled to have the motion served on the public defender, who is then charged with determining whether it is in the interest of justice to represent the defendant at public expense. *See id.* 35(c)(3)(V); Colo. Rev. Stat. § 21-1-104(1)(b). If the case passes review by the district court and the public defender, the defendant has a right to counsel. *See Silva v. People*, 156 P.3d 1164, 1168 (Colo. 2007). Only if the district court determines that the petition is "wholly unfounded," or the public defender finds it without "arguable merit," can appointment of counsel be denied. *Id.*[2]

Accordingly, because of the procedure for providing assistance of counsel for colorable claims, the prospect of actual injury from denial of access to the recordings

---

[2] Mr. Vreeland asserts that "the state and federal courts have denied [his] motions for counsel." Aplt. Br. at 13. But this conclusory statement, presented without context or explanation, is inadequate in light of Colorado law.

is merely speculative. Also, it is worth noting that notwithstanding his protests to the contrary, Mr. Vreeland appears to understand his true situation; in one of his grievances, shortly after asserting that Rule 35(c) does not allow counsel to be appointed, he stated that "my only other alternative is to motion the trial court to appoint counsel for the post conviction litigation." R., Vol. 1 at 93.

### 4. Retaliation Claim

"It is well-settled that prison officials may not retaliate against or harass an inmate because of the inmate's exercise of his right of access to the courts." *Gee v. Pacheco*, 627 F.3d 1178, 1189 (10th Cir. 2010) (brackets and internal quotation marks omitted). To establish a retaliation claim, Mr. Vreeland had to show (1) that he was engaged in constitutionally protected activity, (2) that the defendants' actions caused him to suffer an injury that "would chill a person of ordinary firmness from continuing to engage in that activity," and (3) that the adverse action was substantially motivated as a response to his protected conduct. *Id.* (internal quotation marks omitted). The district court ruled that he could not establish the second element, because he "fail[ed] to assert an injury or that he has been unable to continue filing grievances or a civil complaint against [Ms.] Schwartz." R., Vol. 1 at 120.

But Mr. Vreeland claims that the district court completely ignored several forms of retaliation taken against him, including the fact that he "was denied and fired from inmate job assignments" and that his right to file grievances was denied or

impeded.  Aplt. Opening Br. at 14.  Although he alleged these retaliatory acts in his original complaint, they were not included in the first amended complaint.  For this reason, we would ordinarily not consider them in assessing the retaliation claim.  *See Mink v. Suthers*, 482 F.3d 1244, 1254 (10th Cir. 2007) ("[A]n amended complaint super[s]edes an original complaint and renders the original complaint without legal effect."  (internal quotation marks omitted)).

Mr. Vreeland contends, however, that we should consider these allegations because the district court improperly forced him to abandon the original complaint that contained them.  After reviewing his original complaint, the magistrate judge ordered him to amend it because the complaint misjoined multiple claims and defendants and exceeded the 30-page limit for a prisoner complaint.  Mr. Vreeland objected to the order and the district court overruled his objection.  He then filed his first amended complaint, which dropped several of his allegations of retaliation and the defendants who allegedly committed them.

We therefore examine whether the order to amend was proper.  A plaintiff may join multiple defendants in one action if

> (A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and

> (B) any question of law or fact common to all defendants will arise in the action.

Fed. R. Civ. P. 20(a)(2). We review de novo the district court's legal conclusion that the codefendants were improperly joined under Rule 20(a)(2). *See EEOC v. Peabody W. Coal Co.*, 610 F.3d 1070, 1076 (9th Cir. 2010).

Mr. Vreeland's original complaint contained three types of claims: (1) claims asserted against Ms. Schwartz and others for impeding his access to the courts, in which he also asserted that Ms. Schwartz had retaliated against him for naming her as a defendant in a complaint; (2) retaliation claims involving his prison employment that did not specifically mention Ms. Schwartz but did assert that other defendants were retaliating against him because of the grievances and litigation he had filed against prison staff; and (3) a claim against the Executive Director of the Colorado Department of Corrections (CDOC) for adopting regulations that allegedly deprived him of his rights.

Mr. Vreeland argues that the actions of the defendants "were all related to each other and the claims and Defendants raised/named were all part of one string of conduct that caused the violations of right which were raised." Aplt. Opening Br. at 15. In his objections to the magistrate judge's order he contended that the claims and defendants he named were properly joined as part of his retaliation claim because he "was subjected to retaliation by [defendants S. Morgan, J. Wood, and J. Hansen] as a direct result of the grievances [he] filed against Defendant Schwartz." R., Vol. 1 at 57.

We agree that the alleged acts of retaliation, though involving different defendants and different acts, arose out of a "series of transactions" arising out of common facts: namely, acts of retaliation for the same protected conduct by Mr. Vreeland. The claims were therefore within the permissive joinder rules of Fed. R. Civ. P. 20(a)(2). And these allegations do not appear to be subject to dismissal based on the district court's reasons for dismissing the retaliation allegations contained in the first amended complaint. We also note that acts of retaliation may be actionable even if they do not prevent or discourage the particular plaintiff from engaging in protected activity, so long as they would "chill a person of ordinary firmness." *Gee*, 627 F.3d at 1189. Mr. Vreeland may be more determined than most.

Accordingly, we vacate the dismissal of the retaliation claim in the first amended complaint and remand with instructions to grant Mr. Vreeland leave to file an amended complaint reasserting his retaliation claim against all defendants who can properly be joined under Rule 20(a)(2). In light of this disposition, we need not resolve any other appellate arguments Mr. Vreeland has asserted against the dismissal of his retaliation claim.

**5. Invalidation of Administrative Regulation**

In the first amended complaint Mr. Vreeland also asserted a claim against the CDOC for adopting a regulation concerning photocopies of legal documents that deprived him of his constitutional rights. The district court held that the Eleventh

Amendment barred this claim against the CDOC. And it ruled that it would be futile to grant Mr. Vreeland leave to amend to name an individual defendant from which he could seek injunctive relief, *see Ex Parte Young*, 209 U.S. 123, 150-56 (1908) (permitting suit for prospective relief against state official), because Mr. Vreeland did not have a per se constitutional right to a certain number of photocopies, and he did not assert an injury of constitutional dimension based on how the policy was applied to him. We agree, and affirm the dismissal of this claim for substantially the reasons stated by the district court.

## CONCLUSION

We reverse the district court's dismissal under 28 U.S.C. § 1915(e)(2)(B) of Mr. Vreeland's retaliation claim, and remand with instructions to permit him to file an amended complaint reasserting that claim. We affirm the remainder of the district court's judgment.

Entered for the Court


Harris L Hartz
Circuit Judge